**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**


WILLIAM LEE WILEY                                                                                     **PETITIONER**

**vs.**                                                                    **CIVIL ACTION NO.: 2:00CV130-P-A**

**CHRISTOPHER EPPS, ET AL.**                                                      **RESPONDENTS**

## MEMORANDUM OPINION

Petitioner William Lee Wiley filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking to challenge his otherwise final death sentence for capital murder.

### Procedural and Factual History

Shortly after closing his convenience store around midnight on August 22, 1981, J.B. Turner and his daughter, Patricia Harvey, were shot outside of Mr. Turner's store with a sawed-off, .20-gauge shotgun. Mr. Turner suffered a gunshot wound to his back and a fatal wound to his chest, and he died at the scene. Mrs. Harvey survived but was blinded as a result of the shooting. A black receipt box, in which Mr. Turner had placed the night's receipts and a leather money bag containing between $350 and $400, was taken. An investigation of the scene disclosed three spent .20-gauge shotgun shells and one live round. A green army fatigue cap and black box were found near the scene of the crime. Several days later, a .20-gauge sawed-off pump shotgun was found in the weeds behind Mr. Turner's store, and a subsequent trace revealed William Lee Wiley, Petitioner, was the owner of the gun. Approximately two and one-half weeks later, Petitioner was arrested in Memphis, Tennessee, and he subsequently confessed to the murder and robbery. Petitioner led police to where he discarded the empty money bag and to

an automobile where he had kept the shotgun hidden prior to the commission of the crime.

On February 18, 1982, a jury in the Circuit Court of DeSoto County, Mississippi, convicted Petitioner of capital murder and sentenced him to death.[1]  On appeal, the Mississippi Supreme Court affirmed the jury's finding of guilt but remanded the case for resentencing due to the prosecutor's improper references of appellate review of the death sentence.  *Wiley v. State*, 449 So.2d 756 (Miss. 1984).  On June 20, 1984, following a new sentencing hearing, a jury sentenced Petitioner to death for a second time.  The Mississippi Supreme Court affirmed the sentence and denied Petitioner rehearing on March 19, 1986.  *Wiley v. State*, 484 So.2d 339 (Miss. 1986), *cert. denied*, 479 U.S. 906 (1986).  Petitioner's application for post-conviction relief was denied by the Mississippi Supreme Court on November 25, 1987, and rehearing and certiorari were later denied.  *Wiley v. State*, 517 So.2d 1373, *cert. denied*, 487 U.S. 1246 (1988).  Petitioner then filed a petition in this Court seeking federal habeas relief, which was denied by unpublished opinion and order on May 4, 1990.  *Wiley v. Puckett*, No. DC88-132-B-O.  On appeal, the United States Court of Appeals for the Fifth Circuit vacated the portion of the judgment relating to the "especially heinous, atrocious, or cruel" aggravating circumstance and remanded the matter to this Court with instructions to issue the writ unless the State initiated proceedings within a reasonable time.  *Wiley v. Puckett*, 969 F.2d 86, 105-06 (5th Cir. 1992).

Petitioner filed a "Motion and Application for a Life Sentence, or, in the Alternative, for a New Sentencing Hearing" on February 23, 1993, which the Mississippi Supreme Court denied as to the life sentence but granted as to the new sentencing. *Wiley v. State*, 635 So.2d 802 (Miss.

---

[1] Petitioner was tried separately and found guilty of aggravated assault on Mrs. Harvey and sentenced to a prison term of twenty years.

1993). The court remanded the matter to the DeSoto County Circuit Court, and following a jury trial, Petitioner was sentenced to death for a third time on February 3, 1995. The Mississippi Supreme Court affirmed. *Wiley v. State*, 691 So.2d 959 (Miss. 1997), *reh'g denied*, 693 So.2d 384 (Miss. 1997), *cert. denied*, 522 U.S. 88 (1997) ("*Wiley I*").

On April 17, 1998, Petitioner filed an application for state post-conviction relief, which the court denied on June 3, 1999. *Wiley v. State*, 750 So.2d 1193 (Miss. 1999), *cert. denied*, 530 U.S. 1275 (2000) ("*Wiley II*"). A second post-conviction application was filed on October 17, 2002, which the Mississippi Supreme Court denied on April 17, 2003. *Wiley v. State*, 842 So.2d 1280 (Miss. 2003) ("*Wiley III*"). Petitioner filed a third post-conviction application on June 19, 2003, based on the United States Supreme Court decision in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). The Mississippi Supreme Court denied relief on August 26, 2004, and rehearing was denied on October 28, 2004. *Wiley v. State*, 890 So.2d 892 (Miss. 2004) ("*Wiley IV*"). No petition for a writ of certiorari to the United States Supreme Court was filed.

Petitioner filed his initial petition for a writ of habeas corpus with this Court on June 29, 2000, and his third and final amended petition was filed on December 14, 2004 (docket entry no. 23). Petitioner seeks relief on the following fourteen claims of error from his 1995 State court proceedings.

**I. WILEY WAS DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL OF HIS SENTENCING TRIAL.**

**II. WILEY WAS DENIED HIS SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT HIS SENTENCING TRIAL.**

**III. WILEY WAS DENIED HIS EIGHTH AND FOURTEENTH AMENDMENT**

RIGHTS WHEN THE MISSISSIPPI COURTS ALLOWED EXTENSIVE DISCUSSION OF PAROLE DURING VOIR DIRE.

IV.    WILEY WAS DENIED HIS EIGHTH AND FOURTEENTH AMENDMENT RIGHTS WHEN THE MISSISSIPPI COURTS REFUSED WILEY'S PROPOSED JURY INSTRUCTION ON THE "DIMINISHED CAPACITY" STATUTORY MITIGATING FACTOR.

V.    WILEY WAS DENIED HIS EIGHTH AND FOURTEENTH AMENDMENT RIGHTS WHEN THE MISSISSIPPI SUPREME COURT FOUND THAT WILEY'S DEATH SENTENCE WAS PROPORTIONAL TO COMPARABLE CASES.

VI.    WILEY'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED BY THE STATE'S REPEATED REFERENCES TO PAROLE.

VII.    WILEY'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED BY THE TRIAL COURT'S DECISION TO STRIKE ALL REFERENCES TO MERCY AND SYMPATHY FROM THE JURY INSTRUCTION.

VIII.    WILEY'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED BY THE STATE'S IMPROPER "SEND A MESSAGE" ARGUMENT.

IX.    WILEY'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED BY THE IMPOSITION OF A DEATH SENTENCE IN RELIANCE ON THE AVOIDING ARREST AGGRAVATING FACTOR.

X.    THE TRIAL COURT'S FAILURE TO DEFINE THE ELEMENTS OF ROBBERY FOR THE JURY VIOLATED THE EIGHTH AND FOURTEENTH AMENDMENTS.

XI.    WILEY'S SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED BY TRIAL COUNSEL'S FAILURE TO INVESTIGATE AND PRESENT MITIGATION EVIDENCE CRUCIAL TO THE SENTENCING DETERMINATION.

XII.    THE MISSISSIPPI SUPREME COURT'S DENIAL OF INVESTIGATIVE FUNDS TO WILEY VIOLATED HIS EIGHTH AND FOURTEENTH AMENDMENT RIGHTS.

XIII.    EXECUTION OF WILEY, WHO IS MENTALLY RETARDED, WOULD VIOLATE THE EIGHTH AND FOURTEENTH AMENDMENTS UNDER ATKINS V. VIRGINIA, 536 U.S. 304 (2002).

XIV.    THE ACCUMULATION OF ERROR IN THIS CASE VIOLATED WILEY'S SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS.

Petitioner's claims, while individually considered, have been renumbered and consolidated for the sake of convenience.

## Applicable Standard

Petitioner filed his federal habeas corpus petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"); therefore, the AEDPA governs this Court's review of his claims. *See Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001). Title 28 U.S.C. § 2254(a) allows a district court to consider a petitioner's application for writ of habeas corpus based on a claim that the petitioner is, as a result of a state court judgment, "in custody in violation of the Constitution or laws or treaties of the United States." The AEDPA prohibits a petitioner's relitigation of issues that were adjudicated on the merits in state proceedings unless that adjudication either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ( 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed. 2d 289 (2000); 28 U.S.C. § 2254(d)(1) and (2). A state court's factual findings carry a presumption of correctness on federal habeas review, and a petitioner wishing to challenge state court fact-finding must rebut the presumption by clear and convincing evidence. *See Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir. 2002); *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning. *See Bell v. Cone*, 535 U.S.685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002); *Penry*, 532 U.S. at 792, 121 S.Ct. at 1918; *Williams*, 529 U.S. at 404-05, 120 S.Ct. at 1519. A federal court may grant habeas relief under the "contrary to" clause if (1) the state

court's conclusion on a question of law is opposite that reached by the Supreme Court, or (2) the state court decides a case differently than the United States Supreme Court has on facts that are materially indistinguishable. *See Mitchell v. Esparaza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003); *Bell*, 535 U.S. at 694, 122 S.Ct. at 1850; *Penry*, 532 U.S. at 792, 121 S.Ct. at 1918; *Williams*, 529 U.S. at 404-06, 120 S.Ct. at 1518-19. Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the applicable legal principle from decisions of the Supreme Court but unreasonably applies the principle to the facts at issue. *See Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534-35, L.Ed.2d 471 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam); *Bell*, 535 U.S. at 694, 122 S.Ct. at 1850; *Penry*, 532 U.S. at 792, 121 S.Ct. at 1918; *Williams*, 529 U.S. at 407-08, 120 S.Ct. at 1520-21. The "unreasonable application" inquiry requires a federal court to question whether the state court's application of Supreme Court precedent was "objectively unreasonable," which requires more than a showing that the decision was merely incorrect. *See Price v. Vincent*, 538 U.S. 634, 641, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner."); *Woodford*, 537 U.S. at 25, 123 S.Ct. at 360; *Penry*, 532 U.S. at 793, 121 S.Ct. at 1918; *Williams*, 529 U.S. at 409-11, 120 S.Ct. at 1522; *Bell*, 535 U.S. at 694, 122 S.Ct. at 1850. Moreover, it is the ultimate decision or conclusion reached by the state court that is reviewed, and not the quality of the opinion. *See Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) (question before federal habeas court is whether ultimate conclusion of state court was objectively reasonable); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (holding § 2254(d) authorizes federal court

to review state court's decision only and not explanation of decision).

The AEDPA imposes the burden of obtaining an evidentiary hearing in federal court on the petitioner, and it also limits the circumstances in which an evidentiary hearing may be granted for those petitioners who have failed to diligently seek to establish the factual bases for their claims in state court. *See Williams*, 529 U.S. at 433-34, 120 S.Ct. at 1489 (prisoners at fault for deficiency in state court record must satisfy heightened standard to obtain evidentiary hearing); *Clark v. Johnson*, 202 F.3d 760, 765-66 (5th Cir. 2000), *cert. denied*, 531 U.S. 831 (2000); *McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998); 28 U.S.C. § 2254(e)(2). "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams*, 529 U.S. at 437, 120 S.Ct. at 1491.

With the foregoing principles in mind, this Court turns to the merits of Petitioner's claims for federal habeas corpus relief.

## I.      Ineffective Assistance of Counsel

A defendant is entitled to the effective assistance of counsel on direct appeal.  *See Douglas v. California*, 372 U.S. 353, 357-58, 83 S.Ct. 814, 816-17, 9 L.Ed.2d 811 (1963); *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).  A claim of ineffective assistance of counsel may only be sustained upon proof that (1) trial counsel's performance was deficient, and (2) trial counsel's deficiency resulted in an unfair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Both the "deficiency" and the "prejudice" prongs must be satisfied, or it cannot be said that the adversarial process was so lacking that it rendered an unreliable result, thereby denying Petitioner a fair trial.  *See id.* at 687.

To show he was deprived of a fair trial, Petitioner must overcome the presumption of "reasonable professional assistance" by showing counsel's errors prejudiced his defense to such a degree that there exists a reasonable probability that if those errors were not committed by counsel, Petitioner would not have received a death sentence. *See id.* at 689-694 (holding "reasonable probability is a probability sufficient to undermine confidence in the outcome"); *Lockhart v. McCotter*, 782 F.2d 1275, 1283 (5th Cir. 1986) (deficiency of counsel that results in error that raises reasonable probability results of proceedings would have been different but for the error denies defendant effective assistance of counsel). Moreover, Petitioner must overcome the presumption of effective assistance by demonstrating counsel's actions were not within the province of a reasonable trial strategy. *See id.* at 689.

Ordinarily, failure to raise a claim on appeal bars it from further review. *See* Miss. Code Ann. § 99-39-21(1). Normally, in order to overcome the imposition of a procedural bar considered independent of federal law and adequate to support the judgment, a petitioner must demonstrate cause for the default and resulting prejudice. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). However, a meritorious ineffective assistance of counsel claim can establish cause to overcome the imposition of a procedural bar and allow a review of a defaulted claim. *See Murray v. Carrier*, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986).

A.     Appeal: "Avoiding Arrest" Aggravator

Petitioner asserts he received ineffective assistance of counsel on direct appeal of his resentencing trial when counsel failed to appeal the jury's finding of the "avoiding arrest"

statutory aggravating factor. (Pet. Memo 8). Two statutory aggravating factors were found by the jury: (1) that the murder was committed during the course of a robbery[2], and (2) that the murder was committed for the purpose of avoiding arrest.[3]  Trial counsel objected to the submission of the factor to the jury on the basis that it was unsupported by the evidence, (Trial Tr. vol. 7, 630, January 26, 1995)(No. 95-DP-149) but appellate counsel failed to raise a challenge to the jury's finding of the aggravating factor.  Petitioner asserts appellate counsel's failure to raise this argument constituted ineffective assistance of counsel for three reasons.  First, that no evidence existed the robbery and murder were carried out to avoid arrest.  Second, that if the evidence is sufficient to allow the offense to fall within the factor, it is invalid as constitutionally overbroad.  Third, that it is impermissibly duplicative of the "during the commission of a robbery" aggravating factor.  (Pet. Memo 9).  Petitioner argues that if these issues had been raised, the factor would have been reversed by the Mississippi Supreme Court, leaving one aggravating factor and no record of the mitigating factors found by the jury, thus raising a "strong likelihood" that the death sentence would have been vacated.  (Pet. Memo 9-10).

In the instant petition, Petitioner argues as a substantive claim that the "avoiding arrest" aggravator is invalid as an attempt to demonstrate his counsel's ineffectiveness.  Petitioner appears to rely upon what he deems the obvious merit of his argument order to establish cause for the defaulted substantive claim, which is also raised as a separate claim of error. As his ineffective assistance claim argues the merits of the substantive claim, the substantive claim will be here

_____

[2] "The capital offense was committed while the defendant was engaged in . . . the commission of . . . [a] robbery."  Miss. Code Ann. § 99-19-101 (5)(d).

[3] "The capital offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody."  Miss. Code Ann. § 99-19-101 (5)(e).

analyzed to avoid later repetition of Petitioner's arguments on the substantive merits.

1. *Insufficient Evidence to Support the Avoiding Arrest Aggravating Factor*

The aggravating factor of "avoiding a lawful arrest" requires proof beyond a reasonable doubt that evidence exists allowing a reasonable inference "that a substantial reason for the killing was to conceal the identity of the killer or killers or to 'cover their tracks' so as to avoid apprehension and eventual arrest by authorities." *Leatherwood v. State*, 435 So.2d 645, 651 (Miss. 1983); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ); *United States v. Bernard*, 299 F.3d 467, 481 (5th Cir. 2002) (aggravating factors must be proven beyond reasonable doubt).  A conviction which rests upon the adduction of insufficient evidence at trial is a violation of due process rights.  *See Jackson,* 443 U.S. at 324, 99 S.Ct. at 2791-92.  The determination of whether the aggravating factor was appropriately submitted requires a fact-specific analysis to determine whether credible evidence exists to support the jury's finding that the murder was committed for the purpose of avoiding or preventing arrest.  *See, e.g.*, *Woodward v. State*, 726 So.2d 524, 541 (Miss. 1997).

Petitioner first argues that there is no case law precedent in Mississippi sustaining this aggravating factor where a potential witness other than an accomplice was left alive.  (Pet. Memo 11).  Petitioner argues Mrs. Harvey, a woman who had done business with Petitioner and could positively identify him, was knowingly left alive; therefore, avoiding arrest could not have been a "substantial reason" for Mr. Turner's murder.  (Pet. Memo 11).  Petitioner asserts that the remaining evidence is insufficient to support the finding of the aggravator, as he left evidence at

the scene, confessed when questioned by authorities, and led police to evidence left near the crime scene. (Pet. Memo 12-13). Petitioner contends that the facts establish he shot into the air and pellets scattered, thereby injuring the victims, and that Mr. Turner was shot only after he drew his own weapon. (Pet. Memo 13-14). Petitioner asserts these facts suggest the murder was a result of a botched robbery and not a killing to avoid arrest for the crime, and that the application of this particular aggravating factor is only proper where the evidence establishes the murder was an attempt to avoid "detection and arrest" for the robbery. (Pet. Memo 11-12, referencing, *e.g., Evans v. State*, 725 So.2d 613, 690 (Miss. 1997)). Respondents counter that the facts support the application of the factor, as Petitioner (1) planned the robbery; (2) hid the gun prior to the robbery; (3) laid in wait for the store to close; (4) shot both Mr. Turner and his daughter; and (5) fled to Memphis, Tennessee. (R. Memo 122).

In *Evans v. State*, which involved the rape and murder of a child by a defendant who befriended the family and deceived the mother in order to effectuate the child's abduction, the defendant argued that the aggravator was not appropriately applied, as "attempts to avoid detection *after* the killing, as occurred here, are arguably relevant only if there is some evidence that the defendant committed the offense in order to avoid detection." *Evans*, 725 So.2d at 689. He also asserted, in addition to insufficient evidence, that the aggravator was vague and overbroad, but the court found no limiting instruction was needed if evidence supported the instruction. *Id.* The court noted the defendant took the victim to a secluded area, taped her mouth, kept everything he used during the commission of the crime in his jeep to avoid leaving evidence at the scene, dumped the body in a secluded area, and disposed of the victim's clothing by the side of the highway. *Id.* at 690. The aggravator was supported, as "[t]he jury had before it

evidence which indicated from the time Evans abducted Beatrice from her mother, he used special precaution to avoid detection or apprehension." *Id.*

In the case at bar, the court noted that the victims knew Petitioner, that Petitioner fired three shots, killing one witness and seriously injuring the other, that he left the murder weapon and box that had contained the money bag in a densely thicketed area, and that he threw the empty money bag in some weeds near a dirt road. *Wiley II*, 750 So.2d at 1206. The court found "there is evidence from which the jury could have reasonably inferred that a substantial reason for the murder was to conceal Wiley's identity, or cover his tracks, so as to avoid apprehension and eventual arrest. Therefore, the granting of the instruction on this aggravator was proper." *Id.* The court also individually considered the substantive claim of insufficient evidence on post-conviction review, and the Mississippi Supreme Court found there to be sufficient evidence to warrant a finding of this aggravator. *Id.* at 1210.

The "avoiding arrest" aggravator is properly considered if the motive for the murder is to avoid arrest for the commission of the underlying felony. *Gray v. Lucas*, 677 F.2d 1086, 1110 (5th Cir. 1982). In Petitioner's case, the jury heard testimony that Petitioner laid in wait for his victims, familiar to Petitioner, prior to emptying his weapon at them. Petitioner shot Mr. Turner twice - a scatter-shot to the back and a close-range, fatal shot to the chest. (Trial Tr. vol. 6, 455-56, January 24, 1995). Petitioner fled the scene, disposing of the murder weapon and money box in an almost unpenetrable thicket. (Trial Tr. vol. 6, 473). This Court cannot say the jury lacked credible evidence to support their finding that the "avoiding arrest" aggravating factor was

warranted.[4]  Petitioner has failed to prove the Mississippi Supreme Court was objectively unreasonable in determining the evidence in this case was sufficient for a rational trier of fact to find the aggravator warranted. There exists no reasonable probability that proceedings against Petitioner would have resulted differently had this issue been raised on direct appeal; therefore, there can be no resulting prejudice from counsel's failure to raise the issue.

    2. *If the "avoiding arrest" aggravating factor is broad enough to include the evidence in this case, then that factor is unconstitutionally overbroad.*

Petitioner next argues that if the evidence in this case establishes that he murdered to "avoid arrest," then the aggravating factor is impermissibly overbroad, as it fails to genuinely narrow the facts of this capital murder from any other capital murder.  (Pet. Memo 15-16). Specifically, Petitioner argues that the only basis for the conclusion that he murdered to avoid arrest is that he killed a person who otherwise could have identified him, which is a fact established any time a defendant kills a witness.  (Pet. Memo 15).  Petitioner asserts that the failure of counsel to raise this argument was deficient and prejudiced Petitioner, as had it been raised, the death sentence would have been invalidated.

The injection of an unconstitutionally overbroad factor into the weighing scheme of capital sentencing requires invalidation of the sentence.  *See Stringer v. Black*, 503 U.S. 222, 237, 112 S.Ct. 1130, 1140, 117 L.Ed.2d 367 (1992).  An aggravating factor must provide a "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases

---

[4] The Court notes that in both *Scott v. State*, 878 So.2d 933, 981 (Miss. 2004) and *Chase v. State*, 645 So.2d 829, 857 (Miss. 1994), the jury found the aggravating factor of "avoiding arrest" warranted where the evidence supported a reasonable inference that the victims were murdered to allow the defendants' escape and avoid arrest, despite the fact that the wives of the victims, present at the time of the offenses, were left alive.

in which it is not." *Godfrey v. Georgia*, 466 U.S. 420, 427, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980) (quoting *Furman v. Georgia*, 408 U.S. 238, 313, 92 S.Ct. 2726, 2763, 33 L.Ed.2d 346 (1972)); *see also Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Therefore, an aggravating factor "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983). The application of a vague aggravator is a violation of the Eighth Amendment because it "creates the risk that the jury will treat the defendant as more deserving than he otherwise might be by relying on the existence of an illusory circumstance." *Stringer*, 503 U.S. at 235, 112 S.Ct. at 1139.

The Mississippi Supreme Court rejected the argument that a limiting instruction must be given to narrow the "avoiding arrest" aggravator. *Wiley II,* 750 So.2d at 1207. The Fifth Circuit has specifically determined that Mississippi's construction serves to appropriately narrow the application of this factor to those defendants who purposefully killed their victim to avoid or prevent arrest for the commission of the underlying felony. *See Gray*, 677 F.2d at 1110. Petitioner attempts to distinguish his case from *Gray v. Lucas*, by arguing that all of the witnesses in that case were killed by the defendant after he completed the crime in order to avoid detection. This distinction is without merit given the steps taken by Petitioner to avoid being caught with the implements of his crime. Petitioner points the Court to no applicable precedent which would require a limiting factor for this aggravator, and the Fifth Circuit has determined Mississippi's sentencing scheme adequately narrows the application of this factor. Petitioner is entitled to no relief on this issue.

3. *The "avoiding arrest" factor is impermissibly duplicative of the "robbery"*
*aggravating factor.*

Petitioner next argues that if the "avoiding arrest" factor is interpreted to include the facts of this case, then it is so broadly interpreted that it includes all murders committed during the course of a robbery. (Pet. Memo 17-18). *See* Miss. Code Ann. § 99-19-101(5)(d) (murder committed during commission of robbery). Petitioner cites *Booker v. State*, 699 So.2d 132, 136 (Miss. 1997), in support of his argument that the silencing of a potential witness who might have facilitated the defendant's arrest is true of every robbery murder, so that circumstance is already accounted for and weighed against the defendant by the application of the "robbery" aggravating factor. (Pet. Memo 18). Petitioner argues that counsel's failure to raise this claim was deficient and prejudiced him, as his sentence would have been reversed had the issue been raised. (Pet. Memo 18-19).

Respondents argue that Mississippi has a long-standing precedent that the "avoiding arrest" aggravator is not imposed without proof the defendant killed to "cover his tracks," and a capital defendant is not entitled to a limiting instruction on the "avoiding arrest" aggravator. *See*, *e.g.*, *Manning*, 735 So.2d at 350; *Bell v. State*, 725 So.2d 836, 858 (Miss. 1998), *cert denied*, 526 U.S. 1122, *reh'g denied*, 527 U.S. 1054 (1999); *Evans*, 725 So.2d at 689-90; *Holland v. State*, 705 So.2d 307, 355-56 (Miss. 1997), *cert. denied*, 525 U.S. 829, *reh'g denied*, 525 U.S. 1013 (1998). In light of that precedent, Respondents argue, Petitioner was unlikely to be afforded relief even if this issue had been raised with the court on direct appeal, thereby precluding a showing of prejudice. Respondents assert that there is no proper analogy between this case and *Booker*, as the latter involved the application of robbery and pecuniary gain aggravating circumstances.

Respondents also argue that even if an analogy could be made between the avoiding arrest/robbery to robbery/pecuniary gain, the Fifth Circuit has ruled it would have to create a new rule in violation of *Teague v. Lane*, 489 U.S. 388, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989), to find constitutional error. *See Wiley v. Puckett*, 969 F.2d at 95-98 (5th Cir.1992).

In the context of ineffective assistance of counsel and on application for post-conviction relief, the Mississippi Supreme court held that "avoiding arrest" and "robbery" aggravators are not the same, as more evidentiary support is required to support an instruction on the "avoiding arrest" factor. *Wiley II*, 750 So.2d at 1208. Therefore, there was no ineffective assistance of counsel as counsel's performance, even assuming deficiency, did not support a finding of prejudice. *Id.*

Under federal law, each aggravating circumstance must distinguish the class of defendants who are eligible for the death penalty. *See Zant*, 462 U.S. at 877, 103 S.Ct. at 2743. As long as narrowing is performed at either the guilt or sentencing phases, the aggravating factor's duplication of an element of the crime does not offend the Constitution. *See, e.g.*, *Williams*, 529 U.S. at 392, 120 S.Ct. at 1512; *Lowenfield v. Phelps*, 484 U.S. 231, 246, 108 S.Ct. 546, 555, 98 L.Ed.2d 568 (1988). Petitioner's reliance on *Booker* is misplaced, as that case involved the application of robbery and pecuniary gain aggravating circumstances to an underlying felony of robbery. Petitioner has pointed to no case which holds it impermissible to use both the robbery and avoiding arrest aggravators in the same case, and Mississippi's scheme serves to narrow the class of persons eligible for the death penalty. Petitioner's claim that the aggravators are impermissibly duplicative is without merit.

Having addressed the substantive merits of this claim and finding no constitutional error,

16

this Court finds that Petitioner's ineffective assistance of counsel claim must fail, as a finding of constitutional infirmity with regard to the underlying claim is necessarily required to meet the prejudice prong of *Strickland*. While this alone would preclude federal habeas relief on this issue, the Court will fully address the ineffective assistance of counsel claim on this issue without regard to the merit of the underlying claim. The United States Supreme Court has held that the failure to raise a claim on appeal objected to at trial could not be an "error of such magnitude that it rendered counsel's performance constitutionally deficient under the test of *Strickland*." *Smith v. Murray*, 477 U.S. 527, 535, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). In *Smith*, petitioner's counsel objected to testimony at trial and did not raise the related claim on appeal. *Id.* at 534, 2666. The Court, recognizing that the acceptance of an argument when the opportunity to raise the issue in state court was deliberately foregone would violate comity principles, failed to accept petitioner's argument that counsel's decision was made in ignorance of the claim's merit. *Id.* at 535, 2666-2667. The Court found that argument "squarely foreclosed," as "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* at 535, 2557 (citing *Carrier*, 477 U.S. at 486-87, 106 S.Ct. at 2641).

In addition, appellate counsel does not have to raise every nonfrivolous issue in order to meet the standard of effectiveness. *See Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998); *West v. Johnson*, 92 F.3d 1385, 1396 (5th Cir. 1996). It is often a strategic move to eliminate what counsel perceives, based on his experience, weaker arguments to avoid diluting the strength of his case. *See Jones v. Barnes*, 463 U.S. 745, 752, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983). Moreover, with regard to Petitioner's third sub-issue under this claim, the United States Supreme

Court has found counsel not ineffective for failing to object to an aggravating circumstance that duplicated the underlying felony. *See Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

Having considered Petitioner's arguments under this claim of error, this Court finds that the decision of the Mississippi Supreme Court - that counsel did not render constitutionally ineffective assistance of counsel - does not represent a decision contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner is entitled to no relief on this claim of error.

**B.**    Sentencing & Appeal: Comments Regarding Parole

Petitioner asserts he received ineffective assistance of counsel at his resentencing trial with regard to two issues involving references to parole: (1) that trial counsel failed to object to veiled references to the possibility of Petitioner's parole if he was not sentenced to death; and (2) appellate counsel failed to point out these references, contained in the record, to the Mississippi Supreme Court on direct appeal of the claim. While each of these claims has been given individual consideration, they are combined for purposes of the Court's analysis. Petitioner cites to three portions of the record in support of his ineffective assistance of counsel claim: (1) voir dire; (2) the cross-examination of three defense witnesses; and (3) the State's closing argument.

During voir dire, several venire members questioned the trial court extensively about whether Petitioner would be given parole if he were sentenced to life in prison.[5] (Trial Tr. vol. 4,

---

[5] The trial court sentenced Petitioner under an old version of the sentencing statute, which only provided the jury the option of sentencing a defendant to life imprisonment or death. Effective July 1, 1994, the statute was amended to provide the jury a third option of life imprisonment without the possibility of parole. *See* Miss. Code Ann. § 97-3-21. The record reveals Petitioner argued against the application of the amended sentencing statute as an *ex post*

152-154, 159-162, January 23, 1995).  The following excerpts from the trial transcript illustrate

the venire's inquiries on the subject.

> Q. [DISTRICT ATTORNEY WILLIAMS:] But the point is under state law
> sentencing is individualized. Okay? You've got to hear the evidence, good and bad,
> about this man and what he did to Mr. Turner in August of 1981 before you can
> weigh it. There's no automatic death. There may be cases where the death penalty
> is not the proper punishment. There may be cases where it is. But in order to
> comply with state law, those elements have to be weighed by a jury. Okay?
> Yes, Sir?
> A. [Prospective Juror No. 32:] No. 32, Paul Cetto.  Could you be a little more
> specific as to what process you're going to go through to have us arrive at this
> decision?

(Trial Tr. vol. 4, 150).

* * * * * *

> Q.[DISTRICT ATTORNEY WILLIAMS:] We're going to have to show you the
> proof. Otherwise, I don't know how you could make a decision. Does that answer you?
> A. Thank you.
> Q. Yes, ma'am?
> A. (Unidentified Prospective Juror) I have a question. Is this life with no parole or
> do they-will there be an opportunity for this jury to distinguish no parole as opposed to the death penalty?

THE COURT: The law says life in prison. The courts or the juries have absolutely nothing to do
with parole laws. If the jury finds this person guilty, which has been done, if the jury sentences
him to life, we don't know whether it's life with or without because that's up to the executive
department. When a jury speaks and when the Court sentences, we're through with that part of it.
Q.  [DISTRICT ATTORNEY WILLIAMS]:  Ma'am, does that-
A. I didn't know if there was an alternative of no parole.
A. (Unidentified Prospective Juror) So he could get out after 20 years?
THE COURT: I think the jury must-I can't answer those type questions. I think the jury is just
going to have to approach it as the prosecutor has been saying-take this, take this and weigh it and
make your decision based upon the way you see the evidence, not upon some uncertainty
unknown down the road which you have no control over and I have no control over and just call it
the way you see it at the conclusion of the trial. That's the only thing we can do. All those
contingencies, I don't know what the answers are, nor does anyone else.
I would go back just a minute. I think [the District Attorney] is about to wind down here. If you
went back 20 or 30 years ago, the Legislature in Jackson determined what cases carried the death
penalty. That didn't make any allowance for local feelings or decisions. Now, if a certain offense

---

*facto* law, and the old version of the sentencing statute was applied.  (Trial Tr. vol. 3, 60-68,
January 23, 1995).

falls within this category, then it's up to the people in DeSoto County up here to determine whether that's a vote death penalty case or a life in prison case. It individualizes rather than a big body like the Legislature trying to speak for the state as a whole. It gives the local people an opportunity to take into consideration the crimes and also take into consideration the defendant himself and everything that can be legally admissible about him where you can make the decision based upon all the evidence that can be made available to you rather than just having a category. I don't know whether that helped you or not, but it will never be taken away from you. You will be the ultimate decision makers.

(Trial Tr. vol. 4, 152-53).

* * * * * *

Q.[DISTRICT ATTORNEY]: Anybody else having problems with the death penalty?
Yes, Ma'am?
A. (Ms. Deborah Buckley).  No. 183.
Q. Ms. Buckley?
A. I just have a question. If the jury decides-does not unanimously decide for the death penalty and life imprisonment is the decision, who-when is-when is it justified-when would it ever be decided that it would definitely be life without parole? I was under the impression that decision could be made in lieu of the death penalty. And what I'm understanding you to say is that the death penalty is not the choice-there is a possibility that he would be given life imprisonment with parole as a possibility. Is that what you're saying?

THE COURT: That's a possibility, yes.
PROSPECTIVE JUROR DEBORAH BUCKLEY: But no jury has the right to say that it's life without parole?
THE COURT: The current status of the law is I'll instruct you as to exactly what the law says now, and that is if you prescribe death, that's your decision; if you prescribe life in prison, that's your decision. Those are the two options that I'll be-
PROSPECTIVE JUROR DEBORAH BUCKLEY: So that is an option?
THE COURT: Yes. It will be in clear black and white print just like I said it just then.
A. (Ms. Margaret Yates) Is that like a hole in the law? To me-I don't know the circumstances of the case or what happened, and if I look at this case and see that I think this man would be a menace to society for the rest of his life and I don't vote for the death penalty but life imprisonment, I would be inclined more to vote for the death penalty because I don't know if he's going to get out. Is this a-
THE COURT: What is your number ma'am?
PROSPECTIVE JUROR MARGARET YATES: Oh, I'm sorry, 182.
THE COURT: Ms. Yates,  let me try to help you if I can. I don't know whether I can or not.

PROSPECTIVE JUROR MARGARET YATES: That kind of bothers me.

THE COURT: I understand that, but you're just exactly like I am and just like the lawyers on both sides. We have to take the law as we find it today, and we have to work with it as we find the law today.

PROSPECTIVE JUROR MARGARET YATES: So even if we vote for life imprisonment, we're not guaranteed life in prison.

THE COURT: No, ma'am. You'll be doing exactly what the law says. That's what the law says. If there's parole down the road somewhere, I don't have any control of it. I can't guess. I can't second guess it nor can you.

PROSPECTIVE JUROR MARGARET YATES: Okay. That's somebody else's job.

THE COURT: The Legislature prescribes the punishment, and once we do that, our job ends, and I'm not a soothsayer; I don't know what's down the road nor do you. We'll just follow the law as the Legislature and the Supreme Court tells us it is today and do the best we can.

Q. [THE DISTRICT ATTORNEY WILLIAMS]:Anybody else? Yes, sir?

PROSPECTIVE JUROR DAN BRIGHT: No. 52, Dan Bright. In other words, what you're saying, Your Honor, is that if given the choice of life imprisonment or the death penalty, if the jury went with life in prison, the defendant could get out tomorrow, he could be paroled tomorrow technically?

THE COURT: Well, not tomorrow.

PROSPECTIVE JUROR DAN BRIGHT: Well, as soon as the trial is over, as soon as he goes back to jail?

THE COURT: Well, at some point in time, possibly yes, I don't know. The sentencing statute says life in prison.

(Trial Tr. vol. 4, 159-162).

Petitioner argues that the discussion on voir dire set the stage for the prosecutor to impermissibly argue the parole issue through veiled references throughout witness testimony and in closing argument. Petitioner argues that his counsel failed to file a reply brief on direct appeal to the State's assertion that there was no prejudicial discussion of parole during the course of the trial, thereby rendering constitutionally deficient performance by failing to cite what he asserts as the numerous references to parole during witness testimony and in closing argument. (Pet. Memo 23).

Petitioner cites the cross-examination of three defense witnesses in support of his argument. First, Dr. Bill Fox, a psychologist, testified on Petitioner's behalf, and Petitioner

asserts the prosecutor's questions implied Petitioner would kill again if released. (Pet. Memo 23).

On direct examination, Dr. Fox was questioned as to Petitioner's prognosis and stated he was of

the opinion that Petitioner's prognosis was "good" provided the appropriate structured treatment

could be put into place. (Trial Tr. vol. 6, 552, January 25, 1995). On cross-examination, the

prosecutor questioned Dr. Fox regarding his belief that Petitioner suffered from "weak internal

controls," such as below-average IQ, a learning disability, and drug/alcohol dependence, in order

to demonstrate those were not mitigating factors in this case based on Petitioner's actions in

carrying out the crime and his efforts to avoid being caught. (Trial Tr. vol. 6, 553-68). In

response to Dr. Fox's statement that weak internal controls combined with substance abuse likely

led to Petitioner's uncharacteristic behavior, Petitioner cites the following exchange as an

uninvited, impermissible reference to Petitioner's future dangerousness.

Q. That's the point. It could have then, and it could now?
A. Yeah, I - -
Q. There's no way that your science can predict human behavior, is there?
A. No. I would - - if I'm agreeing with you, I would agree with you that Mr. Wiley needs to stay away from any kind of substance abuse, any kind of alcohol, or this type of behavior can occur again.
Q. And there's absolutely no way that you can ensure that he won't be an abuser, is there?

(Trial Tr. vol. 6, 567).

Next, Petitioner cites the cross-examination of Dr. Robert Ritter, a neuropsychiatrist who

testified on Petitioner's behalf. On direct examination, Dr. Ritter testified Petitioner was not a

sociopath given to an antisocial pattern of behavior. (Trial Tr. vol. 6, 574-75, January 25, 1995).

Dr. Ritter testified that Petitioner's substance abuse created an upset in the interaction between the

"animal brain" and "thinking brain" that could have caused aberrant behavior. (Trial Tr. vol. 6,

575-76). On cross-examination, Dr. Ritter testified Petitioner suffered from no brain damage or

disease, but that he had consistently ingested intoxicating substances for such a lengthy period of time that he suffered from an addiction and compulsion to obtain the addictive substances. (Trial Tr. vol. 7, 579-80, 582). Upon further questioning, Dr. Ritter stated it was likely Petitioner was controlled by the animal portion of his brain during the two weeks Petitioner was in hiding from the police. (Trial Tr. vol. 7, 590). The exchange regarding the "animal brain" led to the series of questions Petitioner now cites as calculated questions to ensure the jury knew Petitioner could be paroled if not sentenced to death. (Pet. Memo 25).

> Q. Yes. So we could, in fact, say Wiley acted out his old brain predatory instincts on August 22, 1981, when he robbed and murdered Mr. Turner and blinded his daughter?
>
> A. That would be true because at that time he had a diminished cerebral activity, cerebral ability.
>
> Q. Yes, sir. And, of course, since that time, Mr. Wiley has been in custody?
>
> A. Yes, sir.
>
> Q. And, hopefully, he has not had access to any of these substances which he enjoys since he's been arrested.
>
> A. I would assume that to be true, and I think it is true, sir.

(Trial Tr. vol. 7, 590-91).

******

> Q. [I]f he had access to alcohol or narcotics or any of these other substances, because of his lack of inner control he would return right to those abuses, wouldn't he?
>
> A. He does have that tendency, as I see it.
>
> Q. Which means?
>
> A. A person who has been addicted to a substance in the past is more likely to return to that substance than you or I.
>
> Q. Which means that Wiley is capable of repeating this whole process?
>
> A. Yes, sir.

(Trial Tr. vol. 7, 591-92).

Finally, the cross examination of Rev. Ronald Padgett, Director of Religious Programs at

Mississippi State Penitentiary, is cited as an allusion to a parole reference. (Pet. Memo 25-26).

Rev. Padgett testified to his good experience with Petitioner and his belief that Petitioner was

repentant of his crimes. (Trial Tr. vol. 7, 599). On cross-examination, the following testimony

was elicited:

> Q. Of course, [prison is] a fairly structured environment, is it not?
> A. Sure. Yes, it is.
> Q. There's no - - of course, inmates don't have access to drugs or alcohol or shouldn't have?
> A. Okay, shouldn't have.
> Q. It's a whole lot different than an outside environment?
> A. Yes, it is.

(Trial Tr. vol. 7, 601).

With regard to the portion of his claim concerning the prosecutor's closing argument,

Petitioner cites the following passages as error:

> Well, I've seen a lot of psychiatrists and a lot of psychologists take this witness chair and others throughout this state and elsewhere, and I guarantee you one thing: They can't tell you what is a killer by instinct and what isn't. As the good doctor said, the science of the human mind is not an exact science. You can't look at a guy and say he's going to kill or not.
>
> And with all due respect for Mr. Jones' statement that this was a one-time thing, this was a one-time thing, there is no proof to support it. You don't know, I don't know, Judge Baker don't know, the Turners don't know, Mr. Kelly don't know, Mr. Wiley's lawyers don't know, his family don't know whether it's a one-time thing or not and perhaps he don't know.

(Trial Tr. vol. 7, 698).

******

> And we all know, as the good doctor said, what the success rate of treatment is, about 75 percent failure, so to sit up here and tell you that this was a one-time thing, there's no proof to support it. They want to talk about me getting into speculation, to get up here and tell you that there's proof to support the theory that it's a one-time thing is more speculation than I've engaged in. There is no way anybody can tell you what's in a human mind and what it's going to do.

(Trial Tr. vol. 7, 699).

Petitioner asserts that the combination of witness testimony and closing argument regarding what Petitioner might do if he came into contact with drugs or alcohol were references to the possibility of parole, seized upon by the prosecution from the comments made during voir dire. (Pet. Memo 27). Petitioner contends trial counsel's failure to object to these references and appellate counsel's failure to demonstrate to the Mississippi Supreme Court that the references were veiled parole remarks resulted in the jury's consideration of arbitrary factors that prejudiced him. (Pet. Memo 35-36). Petitioner argues that Mississippi case law explicitly prohibits the mention of the possibility of parole at the sentencing phase of a capital murder case, with the exception of habitual offender cases. *See Banks v. State*, 725 So.2d 711, 718 (Miss. 1998) (prosecutors cannot argue defendant's "future dangerousness"); *Balfour v. State*, 598 So.2d 731, 748 (Miss. 1992) (propensity for future dangerousness not legitimate consideration in capital case); *Williams v. State*, 445 So.2d 798, 813 (Miss. 1984) (references to possibility of parole inject arbitrary factors into sentencing proceedings of capital murder trial). Petitioner asserts such arguments "impermissibly penalize defendants for offenses they have not committed" and "promote speculation and arbitrary sentencing by the jury." (Pet. Memo 34-35). Petitioner argues that counsel was ineffective, and Mississippi's failure to apply its own law in finding counsel's performance constitutionally adequate is an unreasonable application of clearly established law, as Petitioner was denied his due process rights based on statements deemed improper by the highest court of this State. *See Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980) (arbitrary denial of state right offends due process). Petitioner argues that the conclusion that parole was never commented on during the trial was an error in factual

determination. (Pet. Memo 28). Petitioner asserts that the court relied upon this unreasonable factual determination on post-conviction review and determined there was no merit to the substantive claim, thus, no ineffective assistance of counsel. (Pet. Memo 28).

The Mississippi Supreme Court, on direct appeal, found that comments made to the jury by the trial judge during voir constituted an exception to the State rule that parole should not be mentioned in a capital sentencing proceeding. *Wiley I*, 691 So.2d at 961-65. The court considered Petitioner's argument that the jury was improperly informed Petitioner might be paroled if given a life sentence, an issue the jury was prohibited from considering at that time under statute and case law. *Id.* at 963. The court distinguished Petitioner's case from other cases holding it error for a jury to consider the issue of parole, as the trial judge in Petitioner's case repeatedly informed the jury of the language of the statute, gave accurate information to the jurors who had questions, and properly instructed the jury prior to sentencing. *Id.* at 964. Moreover, the three prospective jurors who questioned the applicability of parole did not sit on the jury. *Id.* The court reasoned:

> The trial judge followed this Court's instructions to not speculate on parole. He emphasized that the trial court and the jury had no control over parole. When further pressured by the veniremen for a more exact answer, the trial judge gave a truthful response. Moreover, at the close of the presentation of evidence, the trial judge properly instructed the jury regarding the options of life and death. The trial judge's actions in this case did not constitute reversible error; therefore, Wiley's claim on this point is without merit.

*Id.*

The court also considered Petitioner's argument that the prosecutor was arguing Petitioner had a prior criminal record, an unsupported implication, when he commented that this crime was not a "one-time thing." *Id.* at 964-65. The court noted defense counsel argued in closing

argument that Petitioner was not a killer and stated "[t]his was a one-time thing, as bad as it is, and I know it's bad, but it's not characteristic of this person." *Id.* at 965. The court found that the prosecutor's argument was supported by the record evidence of medical expert testimony that Petitioner could perpetrate another crime if under the influence of alcohol, and that the statement was made to rebut defense counsel's own statement. *Id.* Viewing the comment in context of the entire argument, the court held Petitioner's argument without merit. *Id.*

On post-conviction review, Petitioner's claim was first considered in the context of trial counsel's failure to object to the State's references during voir dire, witness examination, and in closing argument. The court recapped its decision on direct appeal regarding the voir dire issue and determined the issue res judicata, as Petitioner was seeking to argue the same merits by couching the claim as ineffective assistance of counsel. *Wiley II*, 750 So.2d at 1200. The court noted that the argument had been rejected on its merits on direct appeal, thereby precluding a finding of deficiency or prejudice. *Id.* Regarding the discussion during voir dire, the court noted that "trial counsel moved for a mistrial, and to quash the jury panel. When these efforts failed, it is difficult to see what more trial counsel could have done." *Id.*

Next, the court considered trial counsel's failure to object to alleged parole references during witness examination. The court found there to be no reference to parole in the examination of Dr. Fox. *Id.* at 1200-01. The court similarly found there to be no mention of parole in the exchange with Dr. Ritter, and further noted the cross-examination questions explored the substance abuse problems Dr. Ritter testified to on direct examination. *Id.* at 1201. The court found no reference to parole in the testimony of Rev. Padgett and noted the prosecutor appeared to be impeaching the witnesses' testimony about Petitioner's model behavior in prison through

questions to explore how well Rev. Padgett knew Petitioner. *Id.* at 1202. The court determined these exchanges were not parole references but were rebuttal evidence and argument to the testimony elicited on direct examination from these witnesses. *Id.* Further, the court found there to be no prejudice proved, even if deficiency could be assumed. *Id.*

The court next considered Petitioner's claim of ineffective assistance of counsel in the context of the prosecutor's closing argument. Petitioner asserted that trial counsel was ineffective for failing to object on the proper grounds to the prosecutor's argument regarding the crime not being a "one-time thing," as the argument was not a comment on prior offenses but on future dangerousness. *Id.* at 1202. The court noted that the claim of improper references to prior criminal behavior was rejected on direct appeal as inaccurate and unsupported. *Id.* at 1203. The court found that the matter had already been ruled on, though it acknowledged the ruling was in a different context. *Id.* The court also found a contemporaneous objection had been made, and that the comments were not references to parole but proper rebuttal comments. *Id.* The court held there to be no demonstration of deficiency and prejudice that would entitle Petitioner to relief on his ineffective assistance of counsel claim. *Id.*

The court also considered whether appellate counsel was ineffective for failing to point out to the court that the record contained comments Petitioner argued could only be properly construed as parole references. The court found that the argument the comments were parole references was without factual support and determined no prejudice was proved. *Id.* at 1208.

The Mississippi Supreme Court has fully considered the claim of ineffective assistance of trial and appellate counsel as it relates to parole comments on voir dire and alleged possibility of parole comments during witness testimony and in closing argument. With regard to the voir dire

comments, trial counsel raised the claim both at trial and on direct appeal, where it was rejected. No basis for a claim of ineffective assistance of counsel claim exists on this issue. Additionally, the failure of trial counsel to object, or appellate counsel to raise on appeal, the issues regarding witness testimony and closing argument has likewise been considered and rejected both substantively and as ineffective assistance of counsel. The court did not find the exchanges to be comments on the possibility of parole. This factual determination has not been sufficiently rebutted by Petitioner, as both the cross-examination questions and closing argument were found to be proper rebuttal. These references were not the explicit parole references condemned by prior Mississippi case law precedent. Moreover, even if deficiency were assumed, Petitioner has demonstrated no prejudice stemming from trial counsel's failure to object or appellate counsel's failure to raise this claim on appeal. Petitioner has failed to demonstrate an unreasonable determination of facts or an unreasonable application of *Strickland* precedent on this issue. He is entitled to no relief on this claim.

C.      Sentencing: "Send a Message"

During closing argument, the prosecutor urged the jury:

Now, I think it's high time that we have a citizen reaction. It should be made clear to William and to everyone else for that matter that the laws of this county are going to be severely enforced with the most severe penalty when our innocent victims, our blameless victims are slaughtered, are blinded, whose lives are wrecked without any fault of their own. We out to make it crystal clear.

(Tr. Tr. vol. 7, 701, January 26, 1995)

******

[F]olks who do these things. . . should be held responsible for their actions. My God, we're not barbarians. . . Folks need to understand that when you commit crime like this, you're going to be held accountable. It's just that simple.

(Trial Tr. vol. 7, 697).

The Mississippi Supreme Court considered this claim on post-conviction review in the context of ineffective assistance of counsel and noted that prosecutors are cautioned from making such arguments, but it acknowledged that recent case law held the caution inapplicable to the sentencing phase of a capital murder case. The court stated:

> We choose not to fault the prosecution for arguing that the "message" conveyed by a death penalty verdict would be different than that urged by the defense. To do so would be disingenuous given the inescapable reality that deterrence is, in fact, an established goal of impo
a message.

*Wiley II*, 750 So.2d at 1205 (citing *Wells v. State*, 698 So.2d 497, 513-514 (Miss. 1997)).

The court determined, therefore, that even if there was deficient performance by counsel, there was no resulting prejudice. *Id*.

Petitioner asserts that this argument served to inflame the jury and to urge consideration of arbitrary factors, and that trial counsel's failure to lodge an objection or to request a mistrial fell below reasonable representation. (Pet. Memo 31-32). Petitioner argues that the decision of the Mississippi Supreme Court was unreasonable, inasmuch as *Wells* was a fact-specific finding that defense counsel "opened the door" to the prosecution's argument by requesting that the jury consider what type of message would be sent if a mentally retarded individual were sentenced to death. (Pet. Memo 33). Moreover, Petitioner argues, even if *Wells* were broad enough to encompass this case, it is still contrary to the requirement that individualized determinations regarding death sentences be made free from emotion. (Pet. Memo 34). *See also Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (sentence of death to be "based on reason rather than caprice or emotion"); *Zant*, 462 U.S. at 879, 103 S.Ct. at 2743-44

("an individualized determination" of circumstances surrounding crime and particular characteristics of defendant required).

Respondents counter that *Wells* and post-*Wells* decisions reinforce the state law standard that prosecutors are allowed to argue that the imposition of death penalty will send a deterrent message. (R. Memo 47, citing, *e.g., King v. State*, 784 So.2d 884, 889-90) (Miss. 2001) (expressly overruling prior precedent stating such argument in sentencing phase of trial would be error)). Respondents argue that it would not have been error to overrule an objection had one been made, so Petitioner cannot make the required proof of prejudice. (R. Memo 49). Respondents argue that there is no applicable precedent Petitioner can cite with regard to this claim, therefore, it would violate the *Teague* doctrine for this Court to rule in his favor. (R. Memo 51).

Without merit in the substantive claim, counsel cannot have rendered deficient performance in failing to object, and no prejudice results from that failure. *See Mayabb v. Johnson*, 168 F.3d 863, 869 (5th Cir. 1999); *Jackson v. Johnson*, 150 F.3d 520, 525-26 (5th Cir. 1998); *Ricalday v .Procunier*, 736 F.3d 203, 208 (5th Cir. 1984). The right at issue in this argument is the right to a fair trial, and the question is whether the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). Petitioner must show he was substantially prejudiced by the comments in order to prove a violation of the right. *See Darden*, 477 U.S. at 183, 106 S.Ct. at 2472 n.15 (comments not constitutional error unless trial rendered unfair). The Supreme Court has recognized that jurors are authorized to

"express the conscience of the community on the ultimate question of life or death."

*Witherspoon v. Illinois*, 391 U.S. 510, 519, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776 (1968).   The

prosecutor's comments, taken in the context of the entire closing argument, demonstrate an

argument that sought to rebut Petitioner's contention that the shootings were accidental and

isolated.  The comments cannot be said to have denied Petitioner a fair trial, as there exists no

reasonable probability that Petitioner would not have been sentenced to death absent the

comments.  Petitioner is entitled to no relief on this claim.

E.     Sentencing: Failure to Oppose Elimination of Mercy and Sympathy from Jury's

       Consideration

Petitioner's next claim of error centers around the trial court's denial of proposed jury

instructions involving the terms "mercy" and "sympathy," based on what Petitioner alleges as the

trial court's erroneous interpretation of the Mississippi Supreme Court's findings in *Mack v.*

*State*, 650 So.2d 1289, 1330-31 (Miss. 1994) (defendant has no entitlement to mercy instruction

at sentencing).  While going over proposed jury instructions, defense counsel objected to a

proposed instruction, asking the court to amend the instruction to find a life sentence could be

imposed even if the aggravating circumstances outweighed the mitigating circumstances.  (Trial

Tr. vol. 7, 638).   The prosecution, arguing against amending the instruction, cited the trial court

to the Mississippi Supreme Court decision in *Mack*.  (Trial Tr. vol. 7, 638).  Neither defense

counsel nor the trial court had read the decision, and the trial court seemingly understood the

decision to prohibit such an instruction.  (Trial Tr. vol. 7, 638-640).[6]

_____

[6] This is exemplified by the trial court's statement "I thought the law was it could be given or not given and it wouldn't be error either way."  (Trial Tr. vol. 7, 640, lines 19-21).  In

Petitioner asserts *Mack* held only that a trial court has the discretion whether to give a "mercy instruction" in a capital case, and that trial counsel did not know whether *Mack* prohibited the jury instruction. (Pet. Memo 39-40). Petitioner alleges that trial counsel's failure to know the law prevented counsel's correction of the trial court's misunderstanding of the issue, thereby preventing the jury from recognizing its ability to consider mercy and sympathy in consideration of Petitioner's fate. (Pet. Memo 40). This failure, Petitioner argues, fell below an objective standard of reasonable representation without strategic justification, and was extremely prejudicial in light of the persuasive mitigating evidence that would have elicited sympathy from the jury had they been aware it could have been considered. (Pet. Memo 40-41). Petitioner cites to evidence presented of his abusive childhood, his Intelligence Quotient ("IQ") less than 80, that he was hard worker, a loving father, and his honorable discharge from the military. (Pet. Memo 40). Petitioner also notes the evidence showed he was addicted to alcohol and drugs and was intoxicated the night of the murder. (Pet. Memo 40-41). Additionally, Petitioner argues, the evidence showed he was repentant of his crime and had become extremely involved in prison ministry and activities, and had been a model prisoner who was even trusted by prison officials to be a "Hall Man" on death row. (Pet. Memo 40-41). But for counsel's failure to inform the court of the properness of the instruction, Petitioner argues, the jury would have considered mercy and sympathy, and the rejection of this claim on post-conviction was a decision was contrary to the established law that mercy is a properly considered sentencing factor for the jury. (Pet. Memo 42).

---

considering a later proposed instruction, the court stated, "D-2 will be refused. It's a mercy instruction - - again, under the Mack case. I was going to grant the instruction." ( Trial Tr. vol. 7, 642, lines 13-15).

The Mississippi Supreme Court considered Petitioner's claim of ineffective assistance of counsel for failing to oppose the elimination of mercy and sympathy from the jury instructions and found it a "huge analytical leap" from failing to oppose jury instructions to the complete elimination of mercy and sympathy from a jury's consideration. *Wiley II*, 750 So.2d at 1203-04. The court noted that United States Supreme Court and Mississippi precedent do not require a mercy instruction be given. *Id.* at 1204. Recognizing that a jury may be instructed not to be swayed by emotion, the court noted that a "catch-all" instruction, allowing the jury's consideration of "any other aspect of the defendant's character or record, and any other circumstance of the offense brought before them during the trial, which the jury, deemed to be mitigating on behalf of the defendant" was given. *Id.* The court also noted that the "catch-all" instruction regarding mitigating circumstances had been long-approved "to encompass any mitigating circumstances not specifically enumerated under Miss. Code Ann. § 99-19-101(6)." *Id.* Additionally, the court noted the record revealed that counsel did argue for the instruction; he just did not succeed. *Id.* at 1203. Therefore, the court found that even if trial counsel was deficient with regard to the proposed jury instruction argument, Petitioner was not prejudiced, as he had no right to a mercy instruction. *Id.* at 1204.

It is well-settled that a jury cannot be precluded from considering mitigating factors related to a defendant's character or the circumstances of his crime in determining whether the defendant should receive "a sentence less than death." *See Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978). However, in *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), the Supreme Court considered whether a jury could be instructed to reach a sentencing decision discounting sympathy. In *Saffle*, the Court rejected the

34

notion that an antisympathy instruction encouraged jurors' interpretation of the instruction as barring consideration of sympathetic mitigating evidence. *Id.* at 492, 1262. *Saffle* drew the "distinction between allowing the jury to consider mitigating evidence and guiding their consideration. It is no doubt constitutionally permissible, if not constitutionally required, . . . for the State to insist that 'the individualized assessment of the appropriateness of the death penalty [be] a moral inquiry into the culpability of the defendant, and not an emotional response to the mitigating evidence." *Id.* at 492-93, 1262 (citing *California v. Brown*, 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987)). While a State cannot prevent the consideration of mitigating evidence, "it need not grant the jury the choice to make the sentencing decision according to its own whims or caprice." *Id.* at 493, 1263.

Petitioner had no entitlement to a mercy instruction. Moreover, trial counsel did argue for the instruction at issue, and the court's instructions allowed the jury's consideration of mitigating evidence. If a misinterpretation regarding *Mack* occurred, it was not prejudicial given that the jury was properly instructed as to mitigating and aggravating circumstances.[7] Therefore, even if counsel was deficient for failing to object to the trial court's alleged misunderstanding of *Mack*, Petitioner was not prejudiced by the failure, as he was not entitled to such an instruction in the first place. Petitioner has failed to prove the decision of the Mississippi Supreme Court was

---

[7] The jury was instructed that "[a]ny other matter, any other aspect of the Defendant's character or record, and any other circumstance of the offense brought before you during the trial of this cause which you, the Jury, deem to be mitigating on behalf of the Defendant" could be considered. (Trial Tr. vol. 1, 147, Instruction C-3). They were also instructed to consider mitigating circumstances, which "may also stem from any fact connected with the circumstances of the offense or the offender - - the defendant's background, his age, his experience, his character, his demeanor, his family or any other facet of his life - - that you believe or feel weighs against a sentence of death." (Trial Tr. vol. 2, 159, Instruction D-7).

contrary to established Supreme Court precedent or an unreasonable application of same.

F.       Trial Counsel's Failure to Investigate and Present Crucial Mitigation Evidence

Petitioner asserts trial counsel failed to adequately investigate and present substantial mitigating evidence through three potential witnesses, which would have provided Petitioner an opportunity to elicit sympathy and mercy from the jury. (Pet. Memo 51-53). Specifically, Petitioner cites as error the failure of counsel to present the testimony of Diane Wiley, Petitioner's estranged wife, and John Thacker, Petitioner's childhood friend. (Pet. Memo 51-52). Petitioner asserts a third witnesses, Joe Annie Butler, his grandmother who reared him, was only allowed an opportunity to present superficial testimony that belied the wealth of mitigating evidence she could have provided. (Pet. Memo 51).

Respondents assert that this claim is barred on federal habeas review, due to the imposition of two adequate and independent state procedural bars. *See* Miss. Code Ann. § 99-39-5(2) (post-conviction application must be filed within one year after conviction) and Miss. Code Ann. § 99-39-27(9) (successive petitions bar). Respondents assert that it was the failure of post-conviction counsel to include this claim in the original post-conviction application; therefore, Petitioner must demonstrate cause and prejudice, by way of ineffective assistance of post-conviction counsel, in order to vitiate the procedural bar. (R. Memo 136). Respondents assert Petitioner cannot meet this burden, as there is no right to post-conviction review, ergo, there is no right to the effective assistance of counsel. Moreover, Respondents argue, the Mississippi Supreme Court alternatively found that the underlying ineffective assistance of counsel claim was without merit. (R. Memo 139-40). Therefore, they argue, Petitioner cannot here demonstrate cause and prejudice sufficient to overcome the procedural bars regarding this

claim.

In reply, Petitioner argues that it was not until after the Mississippi Supreme Court's decision in *Jackson v. State*, 732 So.2d 187, 188 (Miss. 1999), that he had a legal basis to assert the denial of investigatory funds as grounds for relief. (Reply 17). Petitioner contends the denial of funds rendered him unable to investigate, and it was only after "a very limited investigation" with the assistance of pro bono counsel that Petitioner was able to uncover the mitigating evidence he now presents to the Court. (Reply 18). Petitioner asserts this issue is not procedurally barred, as it is based on facts which were previously undiscoverable. (Reply 18). *See also* Miss. Code Ann. § 99-39-23(6)) (excepting from successive petition bar cases involving previously undiscoverable evidence "of such a nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence").

The Mississippi Supreme Court held Petitioner's claim barred and otherwise without merit. *Wiley III*, 842 So.2d at 1286. The court noted that the affidavits attached to the petition failed to reveal any information that was not presented through the testimony of witnesses who testified at Petitioner's resentencing trial. *Id.* The court held that Petitioner failed to show counsel was deficient or that prejudice resulted from counsel's failure to call these witnesses, and that the issue was otherwise without merit. *Id.* The court also addressed Petitioner's claim that *Jackson* represented an "intervening decision" that would vitiate the procedural bar, and it determined Petitioner "had more than one opportunity to present an argument under *Jackson*"

and failed to do so.[8]  *Id.*  Moreover, the evidence presented to the court was not found to be new

evidence undiscoverable at the time of trial or sufficient to allow a different result if it had been

introduced.  *Id.*

Petitioner fails to persuade the Court that he is entitled to have this claim reviewed, as it

is barred on independent and adequate State law grounds.  *See, e.g.*, *Coleman*, 501 U.S. at 750,

111 S.Ct. at 2565; *see also Moore v. Roberts*, 83 F.3d 699, 703 (5th Cir. 1996) (no evidence

Mississippi inconsistently applies time bar); *Sones v. Hargett*, 61 F.3d 410, 417 (5th Cir. 1995)

(Mississippi time bar adequate and independent state law ground); *Johnson v. Puckett*, 176 F.3d

809, 815 n. 3 (5th Cir. 1999).  In order to overcome the imposition of the procedural bar,

Petitioner must demonstrate cause and prejudice, which he fails to do.  This claim was held

barred by the Mississippi Supreme Court as post-conviction counsel - rather than trial counsel -

failed to present the claim in the first post-conviction application.  Petitioner cannot argue the

ineffectiveness of post-conviction counsel to demonstrate "cause," as there is no right to counsel

on state post-conviction review.  *See Ogan v. Cockrell*, 297 F.3d 349, 357 (5th Cir. 2002) (no

"cause" where there is no right to counsel); *Coleman*, 501 U.S. at 752, 111 S.Ct. at 2566; *Beazley

v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001).  Similarly, Petitioner's argument regarding

*Jackson* fails to provide him with relief, as he has not persuaded that it was an "intervening

decision" or that his claim is based on previously undiscoverable facts.

Although not necessary to the disposition of this claim, the Court finds this issue

otherwise without merit.  The affidavits attached to the second post-conviction application,

---

[8] *Jackson* was decided January 28, 1999, prior to the denial of Petitioner's petition for post-conviction relief and subsequent rehearing, which were denied, respectively, on June 3, 1999, and February 3, 2000.

which are also attached to the current petition, fail to present any new, significant evidence that was not introduced at trial. Mrs. Wiley's affidavit establishes she would have testified as to Petitioner's difficult family history and childhood, head injuries he suffered, his attempts at suicide, and his qualities as a husband and father. (Pet. Memo 52, Ex. A). Jo Annie Butler would have testified that she acted as a parent to Petitioner while his mother struggled with mental and emotional problems, Petitioner's physical and mental deficiencies in childhood, the exposure to traumatic events he has endured, and to his "quiet and loving nature." (Pet. Memo 52, Ex. B). Mr. Thacker would have provided character evidence of Petitioner's kindness toward others. (Pet. Memo 53, Ex. C). The Court has reviewed the information that was presented at trial and determines that the substance of the "omitted" information was submitted to the jury through the testimony of those individuals who did testify at trial.[9] Therefore, the Court finds the issue procedurally barred and otherwise without merit. Petitioner is entitled to no relief on this claim.


II.     **Jury Consideration of Parole & State Argument on Parole**

Petitioner alleges a violation of his Eighth and Fourteenth Amendment rights in two

---

[9] The presented testimony included: Mississippi Department of Corrections Record Custodian, Ann Evans (Trial Tr. vol. 6, 521-23, January 25, 1995); Dr. Gary Mooers (Trial Tr. vol. 6, 523-34); Dr. Billy Fox (Trial Tr. vol. 6, 537-552); Dr. Robert Ritter (Trial Tr. vol. 6-7, 569-91); Parchman Penitentiary Unit Administrator, Jessie Streeter (Trial Tr. vol. 7, 594-96); Rev. Ronald Padgett (Trial Tr. vol. 7, 597-600); grandmother, Joanne Butler (Trial Tr. vol. 7, 602-607); friend, Melvin Banks (Trial Tr. vol. 7, 607-608); mother-in-Law, Fairstine Delvridge (Trial Tr. vol. 7, 609-610); friend, Shirley Mae Lewis (Trial Tr. vol. 7, 610-613); friend, Katheria Isom (Trial Tr. vol. 7, 613-615); sons, Kelvin and Columbus Wiley (Trial Tr. vol. 7, 616-620); Sergeant Diane Jackson (Trial Tr. vol. 7, 621-622); and school records custodian, Wendell Davis (Trial Tr. vol. 7, 623-625).

separate claims of error regarding parole comments, the facts of which are fully laid-out in Petitioner's ineffective assistance of counsel claim on these issues.[10] *See* discussion *supra* Part I.B. Petitioner argues that he was denied his federal due process rights by Mississippi's failure to abide by its own law, which at the time of his sentencing trial prohibited the sentencing jury's consideration of the possibility of parole in a capital murder case unless the defendant was an habitual offender. (Pet. Memo 42-43). Specifically, Petitioner asserts that the discussion during voir dire, the "thinly veiled" references to the possibility of parole during trial, and the questioning of witnesses regarding what Petitioner might do if he had access to alcohol or drugs, all culminated in the prosecutor's prejudicial closing argument when he argued against the crime being a "one-time thing." (Pet. Memo 43). Petitioner asserts the Mississippi Supreme Court's interpretation of the events on direct appeal - that the only parole references came during voir dire - constitutes an unreasonable determination of facts regarding the statements at issue. (Pet. Memo 43-44).

First, the Court notes that the only direct references to the possibility of parole were made as a result of the inquiries of prospective jurors. Prior to Petitioner's case, the decisions of the Mississippi Supreme Court established that consideration of parole by a jury was improper. *See, e.g.*, *Williams*, 445 So.2d at 812-14. Respondents contend that the Mississippi Supreme Court properly interpreted this prior precedent in distinguishing this case, as Petitioner's case involved a previously unaddressed factual scenario. This Court agrees. On direct appeal, the Mississippi Supreme Court acknowledged its prior precedent that the consideration of parole in a case not

---

[10] These claims have been considered independently but are consolidated for purposes of the Court's analysis.

involving an habitual offender was forbidden. *Wiley I*, 691 So.2d at 963. The court distinguished Petitioner's case from its seminal decision on the issue of parole consideration, *Walter Williams, Jr. v. State*, and held there to be no reversible error in the trial judge's actions. *Wiley I*, 691 So.2d at 964. The court determined that in Petitioner's case, the trial judge followed the Mississippi Supreme Court's "instructions to not speculate on parole." *Id.* Second, he made it clear to the jurors that parole was a legislative function. *Id.* Third, he responded truthfully to inquiries from the jurors. *Id.* Finally, he gave proper instructions regarding sentencing options. *Id.* On post-conviction review, the matter was held barred from reconsideration based on the doctrine of res judicata. *Wiley II*, 750 So.2d at 1210; *see also* Miss. Code Ann. § 99-39-21(3) (res judicata applicable "to all issues, both factual and legal, decided at trial and on direct appeal").

Whether to allow the mention of parole in a capital sentencing proceeding is a matter of state law; the absence of such a mention is not a federal constitutional requirement. *See O'Dell v. Netherland*, 521 U.S. 151, 158, 117 S.Ct. 1969, 1974, 138 L.Ed.2d 351 (1997); *Simmons v. South Carolina*, 512 U.S. 154, 168-69, 114 S.Ct. 2187, 2196, 129 L.Ed.2d 133 (1994); *California v. Ramos*, 463 U.S. 992, 1014, 103 S.Ct. 3446, 3460, 77 L.Ed.2d 1171 (1983) (whether sentencing jury is informed of parole eligibility is matter of state law). As there is no precedent from the Supreme Court holding it to be error to mention parole in capital sentencing proceedings, there is no conflict with precedent in the decision of the Mississippi Supreme Court. *See Mitchell v. Esparaza*, 540 U.S. at 11, 124 S.Ct. at 17; *see also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874-75, 79 L.Ed.2d 29 (1984) (writ does not issue "on the basis of a perceived error of state law"). Moreover, the United States Supreme Court has determined that a state

supreme court may "interpret and where they see fit, to reinterpret" state law. *See Garner v. Louisiana*, 368 U.S. 157, 169, 82 S.Ct. 248, 254, 7 L.Ed.2d 207 (1961). As a constitutional issue is not raised by the consideration of parole eligibility, Petitioner must demonstrate he was denied a fundamentally fair trial by the comments in order to establish an error that would entitle him to relief. *See Donnelly*, 416 U.S. at 643, 94 S.Ct. at 1871. The jury was properly instructed on the law regarding parole and repeatedly informed it was not an issue for the jury's consideration. Petitioner fails to persuade the Court he is entitled to relief on this issue.

Next, the Court considers Petitioner's argument that parole was improperly mentioned during the questioning of witnesses. The Mississippi Supreme Court considered this argument in the context of ineffective assistance of counsel and determined there was no mention of parole in the exchanges. *Wiley II*, 750 So.2d at 1202. Specifically, the Mississippi Supreme Court determined Petitioner's cited references as parole comments was an inaccurate reading of the record. *Id.* The court went on to note that the questions were in response to testimony given by the witnesses during direct examination, and that no prejudice resulted from counsel's failure to object to the questions. *Id.* at 1200-02.

This issue was not presented in State court, and it would now be barred under Miss. Code Ann. § 99-39-5(2) (time bar), 99-39-21(1) (failure to raise bar), and 99-39-27(9) (successive petition bar). As there is no relief available to Petitioner in State court on this issue, the claim may be considered technically exhausted and is barred for federal habeas review purposes unless Petitioner can demonstrate cause for the default and resulting prejudice, or that a fundamental miscarriage of justice would result from the imposition of the bar. *See, e.g., Gray v. Netherland*, 518 U.S. 152, 161-62, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996); *Coleman v. Thompson*,

501 U.S. at 735 n.1, 750, 111 S.Ct. at 2557, 2565. As previously discussed, Petitioner's claim of ineffective assistance of counsel is insufficient to establish cause and prejudice; therefore, the claim is barred. However, even without the imposition of a procedural bar, this claim would fail. The cross-examination at issue was geared to impeach the witness testimony and in rebuttal to the direct-examination testimony, and not the type of impermissible parole references that would render proceedings against Petitioner unfair.

The Mississippi Supreme Court also imposed a procedural bar to the consideration of Petitioner's claim regarding the prosecutor's "one-time thing" comment during the course of closing argument. On direct appeal, a claim was made regarding the comment, but for different grounds than those presented in state post-conviction or in federal habeas review. Petitioner's argument on direct appeal was that the prosecutor's comment was a reference to Petitioner's prior criminal record. *Wiley I*, 691 So.2d at 964-65. On state post-conviction review, Petitioner "switched theories" and claimed the "one-time thing" argument was a comment on the possibility of parole. The Mississippi Supreme Court refused to consider the claim under the state post-conviction statute, as it was presented as a different legal theory than initially raised, and the court held the claim barred on the basis of Miss. Code Ann. § 99-39-21(1) (failure to raise bar) and Miss. Code Ann. § 99-39-21(2) (different theory bar). *Wiley II*, 750 So.2d 1209. In an alternative addressing of the merits, the court found the comment was not a comment on parole and was made in rebuttal to defense counsel's remarks. *Id.* As previously noted, Petitioner's claim of ineffective assistance of counsel is insufficient to sustain this claim. Petitioner has failed to demonstrate cause and prejudice sufficient to overcome the imposition of the procedural bar, or that fundamental unfairness has resulted.

Petitioner argues that, to the extent procedural bars were imposed by the Mississippi Supreme Court, the bars are inapplicable to this issue due to their inconsistent applications. (Pet. Memo 49 n. 18). When not regularly or consistently followed, a state procedural bar does not prevent federal review. *See Ford v. Georgia*, 498 U.S. 411, 423-34, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991). A state procedural rule is presumed adequate when used by a state court to make an unambiguous denial of relief, but a petitioner may rebut the presumption by demonstrating the rule is not regularly applied by the state. *See Sones*, 61 F.3d at 416-417. Petitioner bears the burden of demonstrating that the contemporaneous objection bar was not regularly applied at the time his appeal was decided, and that the bar was not applied to claims similar to his own. *See Sones*, 61 F.3d at 416; *Amos v. Scott*, 61 F.3d 333, 340 (5th Cir. 1995). Petitioner cites to *Manning v. State*, 735 So.2d 323, 348-49 (Miss. 1999) (no bar applied to reviewing sufficiency of evidence supporting aggravating factor) and *Mickell v. State*, 735 So.2d 1031, 1035 (Miss. 1999) (no bar applied in cases of alleged prosecutorial misconduct) in support of his argument. The Court finds it unnecessarily to delve into a lengthy discussion distinguishing these cases and notes only that neither of these cases involved a petitioner seeking to raise an issue under a different legal theory than that raised on direct appeal. This claim is barred from review.

Even without the imposition of the procedural bar with regard to witness questioning and closing argument, this claim fails. The discussion during voir dire, the questioning of witnesses, and the closing argument of the prosecutor contain none of the direct mentions of parole condemned by the Mississippi Supreme Court. The record reveals that the jury was correctly instructed, and the questioning and argument of the prosecutor was proper rebuttal. The

Mississippi Supreme Court's findings have not been shown to be unreasonable, nor has Petitioner sustained his burden with regard to the court's identification or application of Supreme Court precedent. Petitioner is entitled to no relief on this claim.

## III.    Diminished Capacity Jury Instruction

Petitioner argues that the introduced evidence of his diminished mental capacities, which included the fact that he had sustained head injuries as a child and was under the influence of drugs and alcohol at the time of the murder, entitled him to a "diminished capacity" mitigating instruction at sentencing. (Pet. Memo 44). Petitioner argues that the trial court's refusal to grant a statutory mitigating instruction on this factor was error, and that the Mississippi Supreme Court made an unreasonable determination of facts in light of the extensive evidence produced to support the factor when it affirmed the trial court's finding.[11]  (Pet. Memo 45).   Petitioner alleges his cerebral functioning was affected by drugs and alcohol at the time of the killing, and that his limited mental capacity, when sober, was sufficient to allow a jury to reasonably infer that he lacked capacity to appreciate "the criminality of his conduct or to conform his conduct to the requirements of the law." *See* Miss. Code Ann. § 99-19-101(6)(f). Petitioner asserts the instruction's refusal amounted to an unconstitutional preclusion of the jury's consideration of a statutory mitigating factor the jurors were required to weigh, thereby violating his right to be free from a capricious imposition of the death penalty. (Pet. Memo 46).

On direct appeal, the Mississippi Supreme Court noted that "diminished capacity" is a statutory mitigating factor under Mississippi law and affirmed that Petitioner was entitled to an

---

[11] The refused instruction at issue is Instruction D-8(c), which reads, in part, that "[t]he capacity of William Wiley to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired."  (Trial Tr. vol. 2, 171).

instruction on the mitigator if it was supported by the evidence. *Wiley I*, 691 So.2d at 965-66. However, the court found the instruction unsupported by the evidence. *Id.* at 965. Drawing the comparison between Petitioner's factual circumstances and those of the defendant in *In re Hill*, 460 So.2d 792 (Miss. 1984), the court noted that both had a low IQ and suffered difficulties in school, had suffered the death of someone close to them, and had sustained head trauma. *Id.* at 966. The court found that the evidence did not establish that these factors caused either individual to have a diminished capacity at the time the crime was committed. *Id.* The court noted "[t]he difference between Wiley and Hill is that Wiley became addicted to alcohol and drugs." *Id.* at 966. The court commented, "[t]he only evidence of Wiley's alleged diminished capacity at the time of the crime is the doctor's testimony that Wiley's substance abuse problem caused Wiley to suffer 'a diminished cerebral activity, cerebral ability" at the time of the crime. However, there is no evidence that Wiley was substantially impaired in his capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law." *Id.* [12]

In a footnote, Petitioner attempts to distinguish this case from *In re Hill*, as that case focused on IQ and mental capacities in the distant past, while Petitioner argues his history combined with evidence he was intoxicated at the time of the killing is evidence of specific drug-related impairments. (Pet. Memo 45 n. 15). However, a review of the record reveals that when defense counsel argued for the inclusion of the mitigating instruction, the trial judge stated:

> I don't think there's been any proof to support a diminished capacity. The proof is he drank some that day, took some pills that day and lost his money in a crap game and planned the murder. That's the proof before the jury. . . . It's not any

---

[12] On post-conviction review, the court refused to allow Petitioner to relitigate the claim based on the doctrine of res judicata. *Wiley II*, 750 So.2d at 1210; *see also* Miss. Code Ann. § 99-39-21(3).

> proof in the record of how much he drank that day, when he quit drinking, whether it was that morning or that evening or anything.

(Trial Tr. vol. 7, 635-636).

Respondents assert that the jury was instructed that any factor could be considered in mitigation, and Petitioner was not prevented from providing proof of diminished capacity nor the jury from considering that proof. (R. Memo 95-96). A review of the granted instructions reveals that two "catch-all" instructions were given by the trial court. Instruction C-3 instructed the jury that "[a]ny other matter, any other aspect of the Defendant's character or record, and any other circumstance of the offense brought before you during the trial of this cause which you, the Jury, deem to be mitigating on behalf of the Defendant" could be considered. (Trial Tr. vol. 1, 145-149). The court also instructed the jury that there was "no exhaustive list" of the mitigating factors, but that "any fact connected with the circumstances of the offense or of the offender" could be considered in deciding whether to forego the imposition of the death penalty. (Trial Tr. vol. 2, 159, Instruction D-7). Moreover, defense counsel's closing argument specifically argued the mitigating factors that were contained in proposed Instruction D-8 without objection from the prosecution. (*See* Trial Tr. 7,688-690, January 26, 1995).[13]

At the sentencing phase of a capital murder case, a defendant must be permitted to introduce mitigating evidence, the nature of which may include "any aspect of a defendant's character or record or any of the circumstances of the offense that the defendant proffers as a

---

[13] Defense counsel argued Petitioner's lack of a significant history of criminal activity, his lack of subsequent history of criminal activity, his diminished capacity due to alcohol use and borderline intelligence, his youth at age of offense, his military service, the fact he has been a model prisoner, that he has expressed remorse for his crime, that he cooperated with the police, that he believes in God, and the effect of Petitioner's death on his family as mitigating factors.

basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. at 604, 98 S.Ct. at 2964-65, 57.

However, a court is not obligated to give an instruction where the proof of the mitigating

circumstance lacks evidentiary support. *See Delo v. Lashley*, 507 U.S. 272, 277, 113 S.Ct. 1222,

1225, 122 L.Ed.2d 620 (1993).

This Court finds that the decision of the Mississippi Supreme Court was not an

unreasonable application of clearly established Supreme Court precedent, a decision contrary to

such precedent, nor an unreasonable determination of facts in light of the evidence presented.

Petitioner has not proved an entitlement to the grant of the instruction, and the Mississippi

Supreme Court was not unreasonable in refusing to grant a diminished capacity instruction on the

basis of a history of drug and alcohol abuse. Even if the refusal to grant the instruction could be

considered error, the United States Supreme Court has long-approved of "catch-all" instructions

of the type given in this case to cure any deficiency in jury instructions. *See Brown v. Payton*,

544 U.S. 133, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005); *Boyde v. California*, 494 U.S. 370, 110

S.Ct. 1190, 108 L.Ed.2d 316 (1990). Petitioner is entitled to no relief on this issue.

**IV.    Proportionality**

Mississippi law requires the Mississippi Supreme Court to review the record in cases

where the death penalty has been imposed to determine "whether the sentence of death is

excessive or disproportionate to the penalty imposed in similar cases, considering both the crime

and the defendant." *See* Miss. Code Ann. § 99-19-105(3)(c). Petitioner argues the court's

proportionality review in this case violated his constitutional rights, as the facts of this case,

together with the mitigating circumstances presented at trial, reflect a robbery gone awry. (Pet.

Memo 48). Petitioner asserts that since a proportionality review is required by Mississippi law,

inconsistent application of the review implicates Petitioner's right to be free the arbitrary or

capricious imposition of the death penalty. (Pet. Memo 48).

On direct appeal, the Mississippi Supreme Court found:

A review of other cases indicates that, considering the crime and the defendant, the death penalty in this case was proportionate. A review of other cases indicates that, considering the crime and the defendant, the death penalty in this case was proportionate. *See Cabello v. State*, 471 So.2d 332, 350 (Miss.1985) (death sentence was proportionate where defendant strangled and robbed business owner); *Evans v. State*, 422 So.2d 737, 739 (Miss.1982) (death penalty was proportionate where defendant waited 30 minutes for business to be free of customers before robbing and shooting store attendant); *Booker v. State*, 449 So.2d 209, 222 (Miss.1984) (death penalty was proportionate where defendant shot and robbed business owner); *Conner v. State*, 632 So.2d 1239, 1265 (Miss.1993) (death sentence was proportionate where defendant had intelligence quotient "on the low side of 'average' ", evidence was contradictory as to whether defendant was schizophrenic amnesiac); *Lanier v. State*, 533 So.2d 473, 492 (Miss.1988) (death sentence was proportionate where defendant was mildly mentally retarded, suffered hallucinations, and had been institutionalized twice for alcoholism and drug abuse). *Neal v. State*, 451 So.2d 743, 763 (Miss.1984) (death sentence was proportionate where defendant had troubled childhood and was institutionalized at age 10 due to family and learning difficulties and was severely retarded with mental ability of 8-year-old child). Therefore, Wiley's claim that the death sentence is disproportionate in this case is without merit.

*Wiley I*, 691 So.2d at 967.[14] Petitioner asserts that the cases cited by the Mississippi Supreme

Court "may have been analogous to the circumstances of Wiley's case" but assert "no single,

entire case cited by the court involved as much mitigating evidence, or as little aggravating

evidence, as is present in this case." (Pet. Memo 48).

Respondents argue that proportionality reviews are not mandated by the United States

Constitution, and that this issue is one of state law. (R. Memo 99). *See Pulley*, 465 U.S. at 41,

---

[14] This issue was also raised on state post-conviction review, where it was held without merit and *res judicata*. *Wiley II*, 750 So.2d at 1210.

104 S.Ct. at 874-75; *McCleskey v. Kemp*, 481 U.S. 279, 306-08, 107 S.Ct. 1756, 1774-75, 95 L.Ed.2d 262 (1987); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990).

A state system of capital punishment that channels the jury's discretion by consideration of particularized characteristics of both the defendant and the offense presumes no constitutional violation in the sentence's imposition. *See McCleskey*, 481 U.S. at 308, 107 S.Ct. at 1775. This Court is not required to "look behind" a state court's finding of proportionality to avoid the arbitrary or capricious imposition of a death sentence when the state procedure sufficiently guides the sentencer. *See Walton v. Arizona*, 497 U.S. 639, 655-56, 110 S.Ct. 3047, 3058, 111 L.Ed.2d 511 (1990). The Mississippi Supreme Court rejected this claim without a departure from precedent such that this claim, even if it could be construed by this Court to constitute error, was not denial of due process. *See Pulley*, 465 U.S. at 41-42, 104 S.Ct. at 874-75; *Donnelly*, 416 U.S. at 642, 94 S.Ct. at 1871 (absent specific constitutional violation, federal habeas review limited to consideration of whether error "so infected the trial with unfairness as to make the resulting conviction a denial of due process"). Petitioner is entitled to no relief on this claim.

## V. Mercy and Sympathy

Petitioner argues that the trial court's mistaken belief that it was prohibited from providing a mercy instruction violated Petitioner's Eighth and Fourteenth Amendment rights, and that this omission was especially prejudicial in light of the evidence presented to the jury which would have supported a finding of mercy. (Pet. Memo 50). Specifically, Petitioner argues that the trial court's omission of mercy and sympathy language from the jury instructions, which the jury relied upon as detailed and specific guidance, is "tantamount to instructing the jury that it

50

may not consider these factors." (Reply 13). Further, Petitioner argues that Mississippi failed to apply its own precedent by striking these references from the jury instructions, thereby depriving him of his federal due process rights. (Reply 12).

Respondents argue this claim is barred from consideration, as it was held barred by the Mississippi Supreme Court on post-conviction review. *See Wiley* II, 750 So.2d at 1209; Miss. Code Ann. § 99-39-21. Respondents concede that the precise grounds for the basis of the bar is ambiguous, as the Mississippi Supreme Court stated, "[p]ostconviction relief is not granted upon facts and issues which could or should have been litigated at trial and on appeal. 'The doctrine of *res judicata* shall apply to all issues, both factual and legal, decided at trial and on direct appeal.'" *Id.* The Mississippi Supreme Court, without vitiating the procedural bar, discussed the merits of this claim in the alternative and found the argument of Petitioner to be a mischaracterization of both law and fact. *Id.* at 1209-10. The court determined that while a jury may not be told to completely disregard sympathy, there is no right to a sympathy instruction and a trial judge has the discretion to instruct the jury "against being swayed by such considerations." *Id.* at 1209.

An unambiguous denial of relief on state law grounds that are independent of federal law and adequate to support the judgment precludes this Court's consideration of the claim. *See, e.g., Coleman*, 501 U.S. at 729, 111 S.Ct. at 2553-54 (1991); *Harris*, 489 U.S. at 260, 262, 109 S.Ct. at 1038, 1043. Here, the denial of relief on state grounds was unambiguous, even if there exists some confusion as to whether the claim was rejected as it was not raised on direct appeal or whether it was rejected on the ground of res judicata. The Court determines the claim is barred from review, but determines the claim would fail in the absence of a procedural bar. Just as the

merits of this claim were addressed in the context of ineffective assistance of counsel and found

to be without merit, so are they here.  *See* discussion *supra* Part I.E.  Petitioner was not precluded

from presenting mitigating evidence to the jury for its consideration, and he does not have a

federal constitutional right to a mercy instruction.  *See Johnson v. Texas*, 509 U.S. 350, 371-72,

113 S.Ct. 2658, 2671, 125 L.Ed.2d 290 (1993);  *Saffle*, 494 U.S. at 492-94, 110 S.Ct. at 1262-

1263.  Petitioner is entitled to no relief on this claim.

## VI.     Send a Message Argument

Petitioner asserts that the prosecutor improperly urged the jury to abandon individualized

sentencing considerations and urged a "statement to the community at large" by his "send a

message" argument at sentencing.[15]  (Pet. Memo 50).  Petitioner argues the tactic violated his

Eighth and Fourteenth Amendment rights by denying him a fair sentencing determination.  *See*

*Lockett*, 438 U.S. at 605, 98 S.Ct. at 2965 ("The nonavailability of corrective or modifying

mechanisms with respect to an executed capital sentence underscores the need for individualized

consideration as a constitutional requirement in imposing the death sentence.");  *Zant v. Stephens*,

462 U.S. at 879, 103 S.Ct. at 2744.  The Mississippi Supreme Court held this issue barred on

post-conviction review, as it was not raised on direct appeal.  *Wiley II*, 750 So.2d at 1210; *see*

*also* Miss. Code Ann. § 99-39-21(1).  Alternatively, the court determined that the merits would

likewise fail, as Mississippi law does not deem it error to make a "send a message" argument

during the sentencing phase of a capital murder case.  *Id*.  Petitioner asserts Mississippi failed to

apply its own law in allowing the argument, as *Wells v. State*, 698 So.2d 497 (Miss. 1998), cited

---

[15] The argument made by the prosecutor is cited in the Court's discussion of this issue in Part I, *supra*.

by the Mississippi Supreme Court in alternatively dismissing the merits of this claim, did nothing to change that it is improper for "send a message" arguments to be used to argue for a death sentence. (Reply 12-13).

The imposition of an adequate and independent state procedural bar precludes this Court's review of the claim. *See, e.g.*, *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565. Moreover, there is no specific constitutional prohibition against the type of argument made by the prosecutor in this instance. *See Mitchell*, 540 U.S. at 17, 124 S.Ct. at 11 (in absence of "clearly established Federal law" federal court may not overrule state court for holding different opinion). Mississippi case law permits a "send a message" argument during the sentencing phase of a capital murder trial. *See Wells*, 698 So.2d at 513, *King*, 784 So.2d at 889-90. The jury in this case was instructed according to a statutory scheme designed to channel discretion so as to avoid an arbitrary or capricious imposition of the death sentence. The Court finds that, given the circumstances of the crime, the evidence of guilt, and Petitioner's confession, there exists no reasonable likelihood he would have received a lesser sentence had this argument been omitted. *See, e.g, Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988) (finding petitioner "must demonstrate that the misconduct is persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction could not have occurred but for the improper remarks" in order to establish inflammatory remarks denied petitioner due process). Petitioner has failed to persuade this Court that this argument deprived him of any rights protected under the United States Constitution. Petitioner is entitled to no relief on this issue.


**VII.    Avoiding Arrest Aggravating Factor**

Petitioner argues that his Eighth and Fourteenth Amendment rights were violated by the unconstitutional application of the "avoiding arrest" aggravating factor, as (1) it is not factually supported by the record; (2) application in this case constitutes an unconstitutionally overbroad construction; and (3) the construction impermissibly double-counts the robbery aggravating factor. (Pet. Memo. 50).[16]

On post-conviction review, the Mississippi Supreme Court found Petitioner's arguments regarding the "avoiding arrest" factor to be procedurally barred for failure to raise the issue on direct appeal and without making the requisite showing of cause and prejudice to overcome the imposition of the procedural bar. The court alternatively held that this argument would fail on the merits, which the court discussed in considering this claim in the ineffective assistance of counsel context. *Id.*

This claim is similarly barred on federal habeas review. *See, e.g.*, *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565. However, this claim would fail on the merits even if no procedural bar were imposed. The facts support the application of the aggravating factor, as Petitioner (1) planned the robbery; (2) hid the gun prior to the robbery; (3) laid in wait for the store to close; (4) shot both Mr. Turner and his daughter; and (5) fled to Memphis, Tennessee. The Fifth Circuit has addressed the "avoiding arrest" aggravating factor and found it not overbroad. *See Gray*, 677 F.2d at 1109-10 (finding Mississippi "has construed this aggravating circumstance to refer to purposefully killing the victim of an underlying felony to avoid or prevent arrest for that felony"). Finally, even if the factors could be considered duplicative, the United States Supreme Court has

---

[16] The specific points of argument raised by Petitioner are comprised in this Court's discussion of the aggravating factor in the ineffective assistance of counsel context. *See* discussion *supra* I.A.

held that there is no constitutional error in having an aggravating circumstance duplicate the underlying felony to raise the crime to capital murder. *See Tuilaepa v. California*, 512 U.S. 967, 972, 114 S.Ct. 2630, 2635, 129 L.Ed. 2d 750 (1994) ("The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both)."); *Lowenfield*, 484 U.S. at 246, 108 S.Ct. at 555; *see also Fretwell*, 506 U.S. at 372, 113 S.Ct. at 844. Moreover, even if a proper analogy could be made between the avoiding arrest/robbery and robbery/pecuniary gain factors, the Fifth Circuit has ruled a new rule would have to be created to find constitutional error, thereby violating the nonretroactivity doctrine of *Teague*. *See Wiley*, 969 F.2d 86, 95-98 (5th Cir. 1992). Petitioner is entitled to no relief on this claim.

## VIII.   Failure to Define Elements of Underlying Felony (Robbery) for Jury

Petitioner argues that the jury had to find beyond a reasonable doubt that the crime of robbery occurred in order to impose the aggravating circumstance that the crime occurred during the commission of a robbery, but that the jury was not instructed on the elements of the crime at his resentencing trial. (Pet. Memo 51). Petitioner contends the failure to instruct the jury prevented the jury from making a finding that robbery actually occurred and resulted in a sentence imposed in violation of his constitutional rights. (Pet. Memo 51).

No objection regarding the failure to instruct the jury on the elements of robbery was raised at Petitioner's resentencing trial, and this claim has never been presented to the State courts for review. As it would now be barred under Miss. Code Ann. § 99-39-5(2) (time bar), 99-39-21(1) (failure to raise bar), and 99-39-27(9) (successive petition bar), return to state court would be futile; therefore, the claim may be considered technically exhausted and barred for federal habeas review purposes unless Petitioner can demonstrate cause for the default and

resulting prejudice, or that a fundamental miscarriage of justice would result from the imposition of the bar. *See, e.g.*, *Gray v. Netherland*, 518 U.S. 161-62, 116 S.Ct. at 2080; *Coleman v. Thompson*, 501 U.S. at 735 n.1, 750, 111 S.Ct. at 2557, 2565. In order to otherwise allow review of his claim, Petitioner bears the burden of demonstrating the bar is not strictly or regularly followed. *See Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). Petitioner fails to so persuade and this claim is, therefore, barred from federal habeas review.

However, even if the claim were not barred, it would be without merit. The guilt phase of Petitioner's trial has been affirmed by the Fifth Circuit, and the State was entitled to rely on the conviction as proof of the aggravating circumstance at sentencing. The verdict during the guilt phase of Petitioner's trial was properly introduced at sentencing to support the aggravating factor, as a jury does not have to be instructed on the elements of the underlying felony if it received proper instructions during the guilt phase of the trial. *See Williams v. State*, 684 So.2d 1179, 1187-92 (Miss. 1996); *Irving v. State*, 441 So.2d 846, 849 (Miss. 1983). Petitioner has suffered no prejudice from the trial court's failure to instruct on the underlying felony. *See Williams*, 283 F.3d 272, 281 (5th Cir. 2002) (finding that "unlike a conviction determination, the sentencing jury is not required to focus on each element of [the underlying felony], but instead on weighing the aggravated nature of the [underlying felony] against the mitigators." ). The jury was not required to find the elements of robbery again at resentencing, and Petitioner is entitled to no relief on this claim. *See Lowenfield*, 484 U.S. at 246, 108 S.Ct. at 555 (aggravating circumstance may be in definition of crime and/or in separate sentencing factor).

## IX.     Mississippi Supreme Court's Refusal to Grant Investigative Funds

Petitioner moved the Mississippi Supreme Court to appoint counsel and grant investigative funds during state post-conviction proceedings and was denied funds. Petitioner asserts that this denial, in spite of his indigence, violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution, as well as Mississippi law. (Pet. Memo 56). *See, e.g.*, *Hicks*, 447 U.S. at 346, 100 S.Ct. at 2229 (voluntary creation of substantial right or expectation by state cannot be deprived arbitrarily by state due to Fourteenth Amendment protection); *Jackson v. State*, 732 So.2d at 190 (inmates on death row entitled to funds to investigate facts and claims outside appellate record). Although acknowledging there is no constitutional right to counsel in post-conviction proceedings, Petitioner asserts *Jackson* established a guarantee to investigative funds on state post-conviction review as it has become "an integral part of the Mississippi death penalty appeals process." (Pet. Memo 56-57).

This issue was raised for the first time in Petitioner's second application for state post-conviction relief, where the Mississippi Supreme Court held the claim procedurally barred by Miss. Code Ann. § 99-39-27(9) (successive writ bar) and Miss. Code Ann. § 99-39-5(2) (time bar). *Wiley III*, 842 So.2d at 1282 (Miss. 2003).[17] Petitioner argues this claim is timely, as it was raised after the court's decision in *Jackson*, where prior to that decision, such motions for compensation and litigation expenses were denied. (Reply 17). Petitioner notes that while Mississippi law generally prohibits the filing of successive post-conviction applications, there exists two applicable exceptions in the statute: (1) that his motion is based on newly discovered

_____

[17] Respondents note Petitioner's Eighth and Fourteenth Amendment claims were presented to the state court only upon the second state post-conviction application, almost three years after the Mississippi Supreme Court denied his motion to appoint present counsel. (R. Memo 153).

evidence that could not be presented in the first habeas petition due to the denial of his request for investigative assistance which rendered him unable to investigate his ineffectiveness claims; and (2) that *Jackson* represents an "intervening decision" that would have impacted his sentence. (Reply 17). *See also* Miss. Code Ann. § 99-39-23(6).

The Mississippi Supreme Court considered both of these exceptions to the imposition of the above-mentioned procedural bars and found neither exception applicable. *Wiley III*, 842 So.2d at 1283. At the time the Mississippi Supreme Court decided this issue, Petitioner was represented by Robert McDuff, who was appointed as counsel by the United States District Court, Northern District of Mississippi, on McDuff's motion to vacate the appointment of prior counsel and substitute himself, pro bono. *Id.* at 1282. Mr. McDuff, with co-counsel, filed for state post-conviction relief on Petitioner's behalf, which was denied by the Mississippi Supreme Court June 3, 1999. *See Wiley II*, 750 So.2d 1193 (Miss. 1999). On June 9, 1999, Petitioner filed a motion for rehearing and a motion for appointment of counsel in the event a rehearing was not granted by the court, the later of which presented a claim for the appointment of counsel under *Jackson*. (Pleadings vol. No. 1998-DR-0588). Both the petition and the motion were denied by the court on February 3, 2000. (Pleadings vol. No. 1998-DR-0588).

Although the court denied this claim based on the imposition of the successive petition and time bars, the Mississippi Supreme Court included a discussion of the merits to fully address Petitioner's argument that an exception to the bar applied. *See Wiley III*, 842 So.2d at 1283-84.

> As stated previously, Wiley's present counsel, McDuff, filed a motion to vacate the appointment of Levidiotis and substitute himself as counsel "without payment" in the United States District Court in 1998. Present counsel also represented Wiley on his last PCR in this Court, which was denied June 3, 1999. The motion for rehearing was denied February 3, 2000. Wiley centers much of his argument around *Jackson v. State,* 732 So.2d 187 (Miss.1999), which allowed

appointment of counsel and consideration of reasonable litigation expenses. However, the motion in *Jackson* was granted January 28, 1999, which was prior to the denial of both Wiley's PCR and his motion for rehearing. Wiley has already raised the argument of this "intervening decision" with this Court via his motion for rehearing and separate motion for appointment of counsel and for litigation expenses; now he is essentially seeking a rehearing of that motion under the guise of a post-conviction claim by combining it with a "new" claim of ineffective assistance of counsel.

*Id*. at 1283.

The court then went on to note that there was no Sixth Amendment right to counsel in state post-conviction proceedings, and that Jackson was entitled to the benefit of compensated counsel due to the inability of Mississippi inmates to obtain qualified counsel or assistance from institutional lawyers. *Id.* at 1284. The court distinguished Petitioner's case, as Jackson did not have adequate representation, while Petitioner had "been adequately represented by different lawyers at every state of the process. Furthermore, he is represented by the same counsel who represented him on his last PCR. Surely the assertion is not now that counsel will do a better job the second time around if compensated." *Id.* at 1284. The court went on to note that *Jackson* did not require litigation expenses to be paid but remanded the matter to the trial court. *Id.* Also, the court determined the request in *Jackson* was for a specific purpose, while Petitioner merely made a broad request without specifying need or intended use. *Id.* The court found " no right to litigation funds for a fishing expedition, especially when there is no indication of any fish to be caught. This is Wiley's second post-conviction petition. He has already been heard on the issues he now seeks to raise yet again." *Id.* As there is no constitutional right to counsel on state post-conviction, the court found Petitioner had no liberty interest in the claim nor resulting constitutional violation. *Id.* at 1285.

This claim is barred from federal habeas review due to the imposition of an independent

and adequate state procedural bar.  *See Sones*, 61 F.3d at 416-19; *Moore*, 83 F.3d at 703;

*Johnson*, 176 F.3d at 815 n.3.  Petitioner has not demonstrated cause to overcome the imposition

of the procedural bar, and even if ineffective assistance of counsel regarding failure to bring this

claim in a timely manner were to be considered, it is insufficient to establish cause.  *See*

*Coleman*, 501 U.S. at 752-53, 111 S.Ct. at 2566 (no constitutional right to counsel in state post-

conviction proceedings); *see also* Ogan, 297 F.3d 349, 357 (5ᵗʰ Cir. 2002) (attorney error in filing

state habeas appeal late "cannot be constitutionally ineffective"); *see also* Lewis v. Casey, 518

U.S. 343, 377, 116 S.Ct. 2174, 2193, 135 L.Ed.2d 606 (1996) (economic parity not required by

Fourteenth Amendment and no right to counsel in state post-conviction proceedings).  The

alternative discussion of the merits further precludes a demonstration of prejudice for the reasons

set forth by the Mississippi Supreme Court.  Petitioner is entitled to no relief on this claim.

## X.      Atkins Claim

In *Atkins v. Virginia*, 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), the

United States Supreme Court held that the execution of persons suffering from mental retardation

was proscribed by the Eighth Amendment to the United States Constitution.  *Id.* at 321, 2252.

The Court did not define what constitutes mental retardation for purposes of the Eighth

Amendment, but it cited with approval the mental health community's diagnostic criteria in

noting that "clinical definitions of mental retardation require not only subaverage intellectual

functioning, but also significant limitations in adaptive skills such as communication, self-care,

and self-direction that became manifest before age 18."[18]  *Id.* at 318, 2250.  The Court left it to

---

[18] The Court cited the definitions of mental retardation:

The American Association on Mental Retardation (AAMR) defines mental

the individual states to develop a means of enforcing the restriction against the execution of

mentally retarded offenders. *Id.* at 317, 2250. The Mississippi Supreme Court set forth the

standard by which trial judges are to make determinations of mental retardation by adopting the

definition cited by the Court in *Atkins*, together with the requirement that the Minnesota

Multiphasic Personality Inventory-II ("MMPI-II") be administered to detect possible

malingering. *See Chase v. State*, 873 So.2d 1013, 1028-29 (Miss. 2004). Pursuant to the *Chase*

standard, a determination of mental retardation is to be made by the trial judge, by a

preponderance of the evidence, after evidence is presented by both the defendant and State. *Id.*

The Mississippi Supreme Court has held:

> no defendant may be adjudged mentally retarded for purposes of the Eighth
> Amendment, unless such defendant produces, at a minimum, an expert who

---

retardation as follows: " Mental retardation refers to substantial limitations in
present functioning. It is characterized by significantly subaverage intellectual
functioning, existing concurrently with related limitations in two or more of the
following applicable adaptive skill areas: communication, self-care, home living,
social skills, community use, self-direction, health and safety, functional
academics, leisure, and work. Mental retardation manifests before age 18." Mental
Retardation: Definition, Classification, and Systems of Supports 5 (9th ed.1992).

The American Psychiatric Association's definition is similar: "The essential
feature of Mental Retardation is significantly subaverage general intellectual
functioning (Criterion A) that is accompanied by significant limitations in
adaptive functioning in at least two of the following skill areas: communication,
self-care, home living, social/interpersonal skills, use of community resources,
self-direction, functional academic skills, work, leisure, health, and safety
(Criterion B). The onset must occur before age 18 years (Criterion C). Mental
Retardation has many different etiologies and may be seen as a final common
pathway of various pathological processes that affect the functioning of the central
nervous system." Diagnostic and Statistical Manual of Mental Disorders 41 (4th
ed.2000). "Mild" mental retardation is typically used to describe people with an
IQ level of 50-55 to approximately 70. *Id.,* at 42-43.

*Atkins*, 536 U.S. at 309, 122 S.Ct. at 2245 n.3.

expresses an opinion, to a reasonable degree of certainty, that:

1. The defendant is mentally retarded, as that term is defined by the American Association on Mental Retardation and/or The American Psychiatric Association;
2. The defendant has completed the Minnesota Multi phasic Personality Inventory-II (MMPI-II) and/or other similar tests, and the defendant is not malingering.

*Id.* at 1029. The court defined an "expert" as "a licensed psychologist or psychiatrist, qualified as an expert in the field of assessing mental retardation, and further qualified as an expert in the administration and interpretation of tests, and in the evaluation of persons, for purposes of determining mental retardation." *Id.* The standard for obtaining an evidentiary hearing to make a determination regarding mental retardation was also set forth by the court, and that standard requires an individual seeking such a determination to present an expert affidavit opining that the defendant has a combined IQ score of 75 or below, and that the defendant will be found to be mentally retarded upon further testing. *Id.* Persons whose trials were final pre-*Chase* may obtain an evidentiary hearing by attaching the above-described affidavit to the application for post-conviction relief. *Id.*

Petitioner's *Atkins* claim was considered on post-conviction review, and the Mississippi Supreme Court held that the presented evidence was insufficient to establish Petitioner suffers from mental retardation and denied his application. *Wiley IV*, 890 So.2d at 898. In reaching its conclusion, the court reviewed the evidence presented in support of the claim, which included reports from psychologists Dr. Grant and Dr. Fox, school records, and affidavits from friends and family members. *Id.* at 896. The court noted that Petitioner's school records, which established a poor school performance before Petitioner dropped out after the eighth grade, also established a poor attendance record. *Id.* The court noted the records yielded that Petitioner had missed "59

days in one year, 36 in another and still 31 in another, and that he actually repeated the sixth grade because he dropped out the first time. Wiley's attendance record reflects that his best academic performance occurred in the sixth grade when he had only ten absences, which was the least number of his academic career." *Id.* Moreover, both Petitioner's affidavit and that of his grandmother established Petitioner dropped out of school to work. *Id.* The court further noted:

> The affidavits of Wiley's friends and relatives assert that Wiley is a good husband, father, son and grandson, that he was a good, reliable worker with steady employment at various employers, that he performed household maintenance, repaired automobiles, babysat children, ran errands, supported his family and did numerous other things. Wiley was also in the Army until injuring his leg and getting honorably discharged. The State asserts that the affidavits do not allege or establish that Wiley is mentally retarded. We agree.

*Id.* at 896-97. The court noted that in his previous application for post-conviction relief, in which he alleged his counsel's deficient performance in failing to present adequate mitigating evidence, Petitioner did not include a claim that counsel failed to present evidence he was mentally retarded. *Id.* at 897. Additionally, the court recalled Petitioner's first post-conviction included an argument that the court erred in failing to allow a diminished capacity jury instruction, which was found by the court to be without merit as there was an insufficient basis for the instruction. *Id.* The court cited with approval the State's argument that:

> These reports, affidavits and testimonies do not paint the picture of a retarded person. Simply because retarded people do not operate heavy machinery, retarded people do not drive tractors, retarded people do not hold jobs for much longer than a year at a time, much less work two jobs at a time, retarded people are not admitted to the radio operator school of the Army, retarded people do not get drivers licenses, buy cars and drive cars. Further, retarded people do not support families and see to it that all the bills are paid, retarded people do not see to the care of others and make sure they have enough money, a nice house, and school clothes.

*Id.* at 897.

The court stated "[w]e now find it necessary to expand on the procedure to be used in reaching a determination of mental retardation by holding that this Court will consider the entire record before it in deciding whether to grant an *Atkins* hearing." *Id.* at 897. Citing *Chase*, the court noted that before he may be adjudged mentally retarded, a defendant must submit an expert opinion stating so and have completed the MMPI-II, but that the satisfaction of those requirements does not automatically render an adjudication that he is mentally retarded. *Id.* The court stated Petitioner failed to demonstrate he had completed a test to show he was not malingering. *Id.* at 897-98. The court found that Petitioner had alleged borderline mental retardation at most, and that the record disputed an assertion that his adaptive functioning is significantly limited. *Id.* at 898. The court further found that the school records submitted with the application were insufficient to establish mental retardation prior to age 18 and that the "overwhelming weight of the evidence" established he was not mentally retarded. *Id.* Rather, the court found that Petitioner "was a normal, productive citizen, who was never characterized as being 'mentally retarded' until such time as being mentally retarded became critically important in the realm of post-conviction relief." *Id.*

In his federal habeas petition, Petitioner asserts he presented sufficient evidence to the Mississippi Supreme Court to entitle him to an evidentiary hearing on the issue of mental retardation. (Pet. Memo 58-63). Petitioner contends that the court's denial of an evidentiary hearing on his claim is inconsistent with *Chase* and its progeny, thereby constituting a violation of his Eighth and Fourteenth Amendment rights under the United States Constitution. (Pet. Memo 62). Petitioner supports his claim by relying on Dr. Daniel H. Grant's affidavit from his May, 2003, examination of Petitioner, which concluded Petitioner's full-scale IQ is 68. (Grant

Aff. ¶12, June 17, 2003).[19]   Petitioner also offers support through the affidavit of Dr. Bill R. Fox,

who administered tests to Petitioner in 1987 and 1994, and who reviewed Dr. Grant's test

findings and determined Petitioner's performance on the Wechsler Adult Intelligence Scale III

("WAIS-III") was consistent with Petitioner's performance on the earlier version of the same test

he had administered to Petitioner in 1987 and 1994.[20]   (Fox. Aff.  ¶¶ 3-8, June 16, 2003).

Petitioner argues Dr. Grant's findings, namely, that he has significantly subaverage intellectual

functioning, deficits in at least two adaptive skills areas, and the onset of mental retardation by

age 18, establish that he is mentally retarded.  (Pet. Memo 60).  *See also Atkins*, 536 U.S. at 308

n.5 (noting score of 70-75 on WAIS-III is typical cut off for intellectual functioning prong of

mental retardation).

     Petitioner references the Dr. Grant's test findings to establish support for his assertion

that he suffers from significant limitations in adaptive functioning.  Dr. Grant's testing results

indicate Petitioner's communication skills are in the third percentile (Grant Aff. ¶ 18).   Testing

in mathematics, word recognition, spelling, and reading comprehension yielded scores with grade

equivalents in the fourth to fifth-grade range. (Grant Aff. ¶ 19).  Additional testing yielded scores

---

[19] Petitioner's scores from the 2003 testing yielded a Verbal IQ of 73, a Performance IQ of 68, which were combined for the full-scale IQ score, according to Dr. Grant's affidavit.

[20] Petitioner obtained a full-scale IQ score of 73 on the 1987 test and a full-scale score of 78 on the 1994 test.  Dr. Fox considers these scores consistent with the Petitioner's performance on the 2003 test due to the inflation of scores depending upon how long the test has been used in the population at large, also known as the "Flynn Effect."  In 1997, the WAIS-III replaced the WAIS-R, which had been in use since 1981.  (See Pet Memo 59-60 n. 19).  The tests are periodically revised - or the test is "normalized" - to address the annual inflation in scores, and individuals are thought to gain 3 to 5 IQ points over a 10-year period as the test ages.  Therefore, if the scores on the outdated WAIS-R were normalized, Petitioner's true performance would be in the 71 to 73 range, consistent with the findings on the 2003 test.  (Grant Aff. ¶ 16, June 17, 2003); (Fox Aff. ¶¶ 3- 8, June 16, 2003).

in less than the first percentile on the acquisition and recall of information, which was opined by Dr. Grant to be "significantly impaired," even in light of Petitioner's intellectual limitations. (Grant Aff. ¶ 20). Petitioner scored in the first percentile on the health and safety subtest administered by Dr. Grant. (Grant Aff. ¶ 21). Dr. Grant also found Petitioner's overall performance on the test illustrated "an ability to learn and perform simple tasks, but with significantly impaired reasoning and problem solving skills." (Grant Aff. ¶ 22).

The third requirement to meet the definition of mental retardation is that it be manifested by age 18. Petitioner asserts that the manifestation of mental retardation by age 18 may be established through his academic records and the affidavit of Dr. Grant, who opines that the consistently poor nature of Petitioner's academic performance reflects an onset of mental retardation prior to age 18. (Grant Aff. ¶24). Dr. Grant stated it was his "clinical opinion that William Wiley meets the clinical criteria for mental retardation as set forth in the *Atkins* decision." (Grant Aff. ¶ 31).

The Mississippi Supreme Court subsequently denied Petitioner an evidentiary hearing on his *Atkins* claim and found he was not mentally retarded. *Wiley IV*, 890 So.2d at 897-98. Petitioner's motion for rehearing was denied on October 28, 2004. (Post-Conviction Pleadings vol. No. 2003-DR-1317). In support of the motion for rehearing, Dr. Grant filed a supplemental affidavit which opined that the consistency of Petitioner's scores across tests measuring the same domains assured the accuracy and validity of the test results and precluded a probability of malingering. (Grant Supp. Aff. ¶¶ 6- 7, September 8, 2004). Dr. Grant also stated that the MMPI-II requires a seventh-grade reading comprehension level, which is well-above Petitioner's reading comprehension skills, thereby preventing his completion of the test. (Grant Supp. Aff. ¶

6).

Petitioner argues that the affidavit from Dr. Grant met the threshold requirement for obtaining an evidentiary hearing on his *Atkins* claim, and the Mississippi Supreme Court failed to abide by its own case law and the directives of *Atkins* in denying him a hearing. (Pet. Memo 63). Petitioner argues that the Mississippi Supreme Court's reliance upon the affidavits of Petitioner's friends and relatives to determine Petitioner is not mentally retarded is contrary to the recognized view that mentally retarded persons are often capable of performing "basic life activities." (Reply 7). Petitioner argues that evidence of his limited mental capacity was presented at his 1995 sentencing hearing through the testimony of Dr. Billy Fox and Dr. Gary Mooers, and that his IQ was argued at trial as a mitigating circumstance. (Reply 8). Petitioner contends that he did not fail to develop the factual basis of his mental retardation claim through fault, and this is a factual dispute that entitles him to an evidentiary hearing under federal law and under the Mississippi standard for obtaining an evidentiary hearing on his claim. (Reply 9-10).

Respondents assert Petitioner has failed to comply with Mississippi's requirements for asserting an *Atkins* claim. (R. Memo 164). First, Respondents argue Petitioner does not suffer from limitations in adaptive functioning. Respondents point out that Dr. Grant's affidavit does not address the affidavits from friends and family members that speak to Petitioner's high level of adaptive functioning. (R. Memo 165). Respondents note Dr. Grant's supplemental affidavit fails to mention the affidavits and reports attached to the prior applications for state post-conviction relief as these affidavits refute Petitioner suffers from limitations in adaptive functioning sufficient to support a finding of mental retardation. (R. Memo 166-67). Respondents cite at length the affidavits in support of their argument. These affidavits, from

Petitioner's sister, grandmother, mother-in-law, aunt, ex-wife, several long-time friends, and Petitioner's own affidavit, assert Petitioner frequently provided money to help pay household bills, possessed skill repairing vehicles, provided transportation for others, volunteered for military service, and was a hard, reliable worker who quit school to work to help provide for his family. (See Ex. C-N, Post Conviction Pleading vol. No. 2003-DR-1317).

Next, Respondents address the expert affidavits as they relate to Petitioner's intellectual functioning. Dr. Billy Fox provided two affidavits in this case. The first affidavit stems from his March 27, 1987, examination of Petitioner, which contains a recitation of the mitigating evidence he would have offered had he testified at Petitioner's trial. (Fox Aff., April 14, 1987).[21] The 1987 testing, according to Dr. Fox's affidavit, yielded an overall IQ score of 73. (Fox. Aff ¶7(a)). Dr. Fox provided a supplemental affidavit in June, 2003, stating all of Petitioner's IQ scores, which carry a three to four-point margin of error, are consistent when the Flynn Effect is taken into consideration. (Fox Supp. Aff. ¶13, June 16, 2003). Respondents assert that Flynn Effect has been widely known and debated in the psychological community since it was first published in 1984. Respondents assert that if it were valid as applied to Petitioner, it would have been taken into account by Dr. Fox in his 1995 testimony. (R. Memo 179). Respondents assert that in 1995, Dr. Fox stated the 1987 and 1994 testings were a reliable measure of intelligence. (See Trial Tr. vol. 6, 543, January 25, 1995). Moreover, Respondents argue, Dr. Fox did not address the issue of adaptive functioning in either his 1987 or 1994 reports. (R. Memo 179-80).

---

[21] Dr. Fox notes that he administered the MMPI during the examination, though he does not offer an opinion as to whether Petitioner was malingering. (Fox. Aff. ¶ 5). Dr. Fox's 1994 report states that Petitioner's cooperativeness, attention to task completion, and general demeanor suggested that "the results obtained from this evaluation do realistically represent his current behavioral functioning levels." (Fox "Psychological Evaluation," p. 2, August 22, 1994).

Respondents also cite the report of Dr. Gary Mooers, who performed mitigation services for Petitioner and testified at the resentencing trial, for Dr. Mooer's information regarding Petitioner's adaptive abilities. Specifically, Respondents cite that Dr. Mooers provided information that Petitioner (1) was trained as a radio man in the Army; (2) worked on construction as a heavy equipment operator; (3) was a skilled amateur mechanic and carpenter; (4) is trusted to be a "hall man" on death row; (5) studies the Bible and "consistently scores in the superior range in tests at the conclusion of each lesson"; (6) reads and writes a great deal; (7) exhibited a strong work ethic; and (8) is the "unofficial chaplain" for death row. (Mooers Report, Ex. P to R. "Memorandum in Support of Answer and Return to the Petition for Writ of Habeas Corpus"); (Trial Tr. vol. 6, 523-36, January 24, 1995 ).

In *Atkins*, the Court noted that imposing the death penalty served the dual societal purposes of deterrence and retribution, and that unless one of these is furthered by its imposition, the death penalty constitutes cruel and unusual punishment. *Atkins*, 536 U.S. at 319, 122 S.Ct. at 2251. Mentally retarded individuals are less culpable, therefore, a death sentence to one without the requisite culpability fails to adequately narrow the use of the death penalty. *Id.* Further, deterrence may only be realized when the murder is deliberate and premeditated, factors which are diminished in mentally retarded offenders, as their characteristics, including impairments in behavior and cognition "make it less likely that they can process the information of the possibility of execution as a penalty and, as a result, control their conduct based on that information." *Id.* at 319-20, 2251. It is with this recognition in mind that this Court considers Petitioner's claim.

First, with regard to Petitioner's IQ score as a criterion of mental retardation, the record

does not reveal any clear indication or opinion that Petitioner is mentally retarded. Dr. Fox, on direct examination, testified that Petitioner's scores on tests to measure academic performance suggested that "when you compare [the scores] with his IQ, we've got - - it would suggest a learning disability, he's underachieving significantly, and it would suggest a learning disability." (Trial Tr. vol. 6, 547, lines 2-5). He also testified Petitioner's scores on the WAIS fell within "the borderline range" on both the 1994 and 1987 tests. (Trial Tr. vol. 6, 543, lines 4-5, 12-16). In his testimony, Dr. Fox twice referenced the difference between mental retardation and borderline mental retardation. Dr. Fox stated that "you have about 3 percent mentally retarded, and you'd have another percent above that if you bring in borderline." (Trial Tr. vol. 6, 556, lines 13-15). In the second instance, he testified that "[w]e have a low average, dull normal, from 80 to 89 and then the borderline range from 70-79 and below 70 is considered mental retardation." (Trial Tr. vol. 6, 543, lines 6-9). The trial testimony clearly indicates Petitioner suffers from subaverage intellectual functioning, but the evidence presented does not indicate that he meets the IQ criterion of a clinical definition of mental retardation, nor that he is mentally retarded for purposes of the Eighth Amendment.

Second, the Mississippi Supreme Court has considered the argument that the MMPI-II is an inappropriate test for those individuals with mental retardation, as it requires a reading comprehension level beyond the ability of most mentally retarded individuals. *See Scott v. State*,938 So.2d 1233, 1238 (Miss. 2006). The court has found that "this Court has not disregarded the MMPI-II test. The MMPI-II test is required prior to an adjudication on a claim of mental retardation pursuant to *Atkins* and *Chase*." *Id.* To date, Petitioner has not submitted the results of an MMPI-II for review, despite Mississippi's clear statement that it is required prior to

an adjudication of mental retardation.

Next, the Court considers Petitioner's argument that the Mississippi Supreme Court has granted defendants evidentiary hearings on weaker facts. *See, e.g., Conner v. State*, 904 So.2d 105 (2004); *Doss v. State*, 882 So.2d 176 (Miss. 2004); *Brown v. State*, 875 So.2d 202 (Miss. 2004). The Court finds while these cases granted evidentiary hearings to defendants upon meeting the *Chase* requirements, they do not shed any light on the court's treatment of claims where the weight of the evidence suggests an absence of mental retardation. Rather, it appears as though the Mississippi Supreme Court has refused to grant an evidentiary hearing where such would be a perfunctory exercise. *See Hughes v. State*, 892 So.2d 203, 215-16 (Miss. 2004) (no evidentiary hearing despite meeting of technical requirements as "record in this case overwhelmingly belies the assertions that Hughes is mentally retarded); *Scott*, 878 So.2d 933 (proof did not require remand for evidentiary hearing as expert opinion was that defendant was most likely in category of "borderline retardation," thus failing to meet standard for *Chase* hearing); *Branch v. State*, 882 So.2d 36, 49-51 (Miss. 2004) (early manifestation of intellectual limitations without current adaptive limitations insufficient to warrant finding defendant belonged to "category of persons protected under *Atkins*"). Petitioner's argument that Supreme Court precedent requires a hearing on the issue is inapplicable where Petitioner has failed to allege facts that would entitle him to relief. *See Towsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). At best, Petitioner has presented the Court with allegations.

A review of the aforementioned Mississippi cases, both where an evidentiary hearing was granted and where one was not, indicate that the Mississippi Supreme Court allows for an evidentiary hearing upon strict adherence to the *Chase* requirements, unless the proof is such that

the court may dispose of the claim as having no merit without a remand.  In this case, the trial record reflects Petitioner suffers from borderline intellectual functioning, which Petitioner's own expert classified as distinct from mental retardation.  *See also*, American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 48 (4th ed. text rev. 2000)("Borderline Intellectual Functioning describes an IQ range that is higher than that for Mental Retardation."). The Mississippi Supreme Court, upon consideration of the record before it, determined that the record as a whole negated a finding of mental retardation.  As Petitioner's *Atkins* claim was rejected on the merits, and as there is no clearly established procedure by which states are to appropriately restrict death sentences pursuant to *Atkins*, the questions before this Court are whether the Mississippi Supreme Court (1) made a decision that was contrary to, or involved an unreasonable application of, clearly established federal precedent; or (2) made an unreasonable determination of facts in light of the evidence Petitioner presented. *See* 28 U.S.C. §2254(d)(1) & (2).  This Court finds that the Mississippi Supreme Court did neither.

Inasmuch as Mississippi has established a procedure by which to properly restrict death sentences for the purpose of the Eighth Amendment, the procedure is a matter of state law not cognizable on federal habeas review unless it produces a fundamentally unfair result.  *See, e.g., Estelle,* 502 U.S. at 67-68, 112 S.Ct. at 480; *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982)("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."). This Court cannot say that proceedings against Petitioner were fundamentally unfair due to the denial of an evidentiary hearing in this case.

Despite the court's clear statement that Petitioner's failure to complete the MMPI-II was

fatal to his claim, Petitioner has failed to meet the proof the Mississippi Supreme Court explicitly stated is required for a mental retardation claim. The fact that the court reached the merits of the claim does not aid Petitioner, as the expert opinions offered in this case failed to establish significant limitations in adaptive skills or establish the onset of mental retardation prior to age 18. An experts' *allegation* of significant limitations in adaptive functioning will not suffice, nor will school records that display a strong correlation between absences and failing grades.

This Court cannot say the decision of the Mississippi Supreme Court in determining Petitioner is not mentally retarded is a decision contrary to, or involves an unreasonable application of, *Atkins*. While the Court is not unsympathetic to Petitioner's argument that he is unable to meet Mississippi's technical requirements for an evidentiary hearing due to his limitations in reading comprehension, this issue of State law cannot be said to have denied Petitioner fundamental fairness in the proceedings in light of the evidence debunking Petitioner's claim of mental retardation. Petitioner is entitled to no relief on this issue.

## XI.     Cumulative Error

Petitioner asserts that the aggregate impact of errors in this case warrant this Court vacating his death sentence. (Pet. Memo 64). This claim was raised with the Mississippi Supreme Court on Petitioner's post-conviction application, where the court determined the issue was whether Petitioner received a fair, and not a perfect, trial and denied the claim as none of the individual claims had merit. *Wiley II*, 750 So.2d at 1210-11. Cumulative error can lie when the errors are themselves of constitutional dimension and upon review of "the record as a whole to determine whether the errors more likely than not caused a suspect verdict." *Spence v. Johnson*, 80 F.3d 989, 1001 (5th Cir. 1996)). The Fifth Circuit has held:

> After en banc rehearing, we now hold that federal *habeas corpus relief may only be granted for cumulative errors* in the conduct of a state trial where (1) *the individual errors involved matters of constitutional dimension rather than mere violations of state law*; (2) *the errors were not procedurally defaulted for habeas purposes*; and (3) *the errors "so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400-01, 38 L.Ed.2d 368 (1973).

*Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)(en banc).

After carefully considering the entire record and finding Petitioner was afforded his constitutional protections and a fair trial, the Court finds no error to cumulate. Petitioner is entitled to no relief on this claim.

### Conclusion

For the reasons stated herein, this Court concludes Petitioner is not entitled to relief under 28 U.S.C. § 2254, and the instant petition shall be dismissed with prejudice. A separate order in accordance with this opinion shall issue today.

**THIS** the 29th day of January, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE