**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**WILLIAM LEE WILEY**                                                      **PETITIONER**

**V.**                              **CIVIL ACTION NO.: 2:00CV130-P-A**

**CHRISTOPHER EPPS, ET AL.**                               **RESPONDENTS**

### ORDER

Petitioner, a death-row inmate, was denied a petition for writ of habeas corpus by this Court on February 2, 2007. Included among his claims for relief was that Petitioner's execution would violate the Eighth and Fourteenth Amendments to the United States Constitution under *Atkins v. Virginia*, 536 U.S. 304 (2002), which prohibits states from executing mentally retarded persons. Presently before the Court is "Petitioner William Lee Wiley's Motion to Alter or Amend This Court's February 2, 2007, Order," filed with the Court on February 16, 2007.[1] Petitioner asserts this Court should amend its order pursuant to Rule 59(e) of the Federal Rules of Civil Procedure as it erroneously concluded that (1) the Minnesota Multiphasic Personality Inventory-II ("MMPI-II") test is a prerequisite to an *Atkins* hearing under Mississippi law; and (2) Petitioner's factual allegations do not entitle him to an evidentiary hearing under federal law and *Townsend v. Sain*, 372 U.S. 293 (1963).

The purpose of a Rule 59(e) motion is not to relitigate arguments or persuade a rehearing on the merits, but to call into question a judgment's correctness. *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). A judgment may be amended under the rule when there exists a

---
[1] Docket entry. no. 37.

need to: (1) correct a clear error or prevent manifest injustice; (2) present previously undiscoverable evidence; or (3) reflect an intervening change in controlling law. *See Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002); *see also* 11 Wright, Miller & Kane, *Federal Practice & Procedure: Civil* 2d § 2810.1, p. 125-27 (1995). While it is "an extraordinary remedy that should be used sparingly," courts have a great deal of discretion in whether to grant or deny a Rule 59 motion. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004); *see also Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), abrogated on other grounds by *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n. 14 (5th Cir. 1994). For the following reasons, Petitioner's motion is **PARTIALLY GRANTED**.

## Background

Following *Atkins*, which left it to the individual states to establish procedures to properly restrict death sentences as to mentally retarded offenders, the Mississippi Supreme Court established the procedure by which persons asserting a claim of mental retardation may obtain an evidentiary hearing and receive an adjudication on the issue. *See Chase v. State*, 873 So.2d 1013 (Miss. 2004). *Chase* requires defendants seeking an evidentiary hearing on a claim of mental retardation to produce an affidavit from an expert who opines the defendant's Intelligence Quotient ("IQ") is 75 or below, and that he is, or will be found upon further testing, mentally retarded. *Id.* at 1029. The minimum requirement for an adjudication of mental retardation requires the defendant to produce an expert opinion that he is mentally retarded, and that he has completed the MMPI-II or similar tests to show he is not malingering. *Id.* The Mississippi Supreme Court expanded the procedure in *Wiley v. State*, 890 So.2d 892 (Miss. 2004), where it held the court would consider the record in its entirety prior to making a decision whether to grant

an *Atkins* hearing. *Id.* at 897.

During his state post-conviction proceedings, Petitioner submitted various testing results and affidavits in support of his claim of mental retardation. He presented an affidavit from Dr. Daniel Grant, who opined Petitioner's full-scale IQ score of 68 on the Wechsler Adult Intelligence Scale-III ("WAIS-III"), combined with his limitations in adaptive behaviors and the manifestation of mental retardation by age 18, purportedly evidenced by records reflecting his poor school performance, met the clinical definition of mental retardation. Petitioner's claim was rejected by the Mississippi Supreme Court, and he was denied the opportunity to present evidence of his claim at an evidentiary hearing, as the court determined the totality of the evidence precluded the possibility that Petitioner was mentally retarded. Specifically, the court determined the filed affidavits failed to "allege or establish" significant limitations in adaptive functioning, that Petitioner's school records were insufficient to establish the onset of mental retardation prior to age 18, and that Petitioner had failed to present any test evidence to show he was not malingering. *Id.* at 896-98. The court stated:

> [W]e find that the overwhelming weight of the evidence resolves the issue of borderline intelligence and shows that Wiley was not mentally retarded before age 18. The record shows that Wiley was a normal, productive citizen, who was never characterized as "mentally retarded" until such time as being mentally retarded became critically important in the realm of post-conviction relief.

*Id.* Petitioner moved for rehearing, attaching to the motion a supplemental affidavit from Dr. Grant, in which Dr. Grant addressed the issues raised by the court in its denial of Petitioner's claim. The Mississippi Supreme Court denied the motion without written opinion.

In his federal habeas petition, Petitioner alleged that his testing results establish he is mentally retarded. (Pet. 42-43). In his brief on the issue, Petitioner asserted the Mississippi Supreme Court's denial of an evidentiary hearing constituted error, as it was inconsistent with

Mississippi case law and violated *Atkins*' express requirement that the states develop an appropriate means to enforce restrictions on the execution of mentally retarded persons. (Pet. Memo 62-63).

On February 16, 2007, Petitioner filed the instant Motion, asserting the Court made a manifest error of law in concluding Mississippi law requires an MMPI-II test prior to receiving an *Atkins* hearing, and that the Court made an manifest error of law or fact in holding Petitioner was not entitled to an evidentiary hearing on his claim. (Mot. 2). The Court addresses each of these assertions in turn.

I.  **Mississippi Case Law and the MMPI-II**

Petitioner argues that the Court erred as a matter of law in finding Mississippi law requires the MMPI-II as a prerequisite to a hearing on an *Atkins* claim, in that: (1) Mississippi law does not require the testing as a prerequisite to an *Atkins* hearing; (2) Petitioner's affidavits support the contention that he was not malingering; and (3) even if MMPI-II testing were a prerequisite, it would be unconstitutional as an unreasonable application of *Atkins*.

In its opinion, this Court determined that its review of Mississippi cases indicated the Mississippi Supreme Court "allows for an evidentiary hearing upon strict adherence to the *Chase* requirements, unless the proof is such that the court may dispose of the claim as having no merit without a remand." (Op. 71-72). Based on the Mississippi Supreme Court's review of the evidence in the case, and its opinion that the presented evidence failed to establish Petitioner's significant limitations in adaptive skills, the onset of mental retardation prior to age 18, and Petitioner's failure to submit the results of an MMPI-II test, the Court concluded that Petitioner failed to demonstrate he was entitled to relief under the standards of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (Op. 72-73). The Court noted that

Mississippi's *procedure* for restricting death sentences was a matter of state law, and that Petitioner had failed to demonstrate the Mississippi procedure had produced an unfair result in light of the evidence discrediting his claim of mental retardation. (Op. 72-73). The Court concluded it was "not unsympathetic to Petitioner's argument that he is unable to meet Mississippi's technical requirements for an evidentiary hearing due to his limitations in reading comprehension" but determined the failure of the State to afford him a hearing on the issue did not deny him a fundamentally fair proceeding in light of the evidence presented. (Op. 73). To the extent the opinion implies Mississippi law requires the submission of an MMPI-II test in order to receive an *Atkins* hearing, it is error.

The Mississippi Supreme Court recently clarified the issue of its endorsement of the MMPI-II test in *Lynch v. State*, \_\_\_\_ So.2d \_\_\_\_\_, 2007 WL 474271 (Miss. Feb. 15, 2007), where the court stated it "did not intend by its holding to declare the MMPI-II or any one test as exclusively sufficient" to detect malingering in making a determination of mental retardation. *Id.* at \*6. The court held that "[t]he Court's interpretation in this case as to the proper test to be administered with regard to an *Atkins* hearing supercedes any contrary decisions. This Court neither endorses the MMPI-II as the best test nor declares it is a required test, and the decisions that state otherwise are expressly overruled." *Id.* at \*7.

Petitioner asserts that Mississippi law does not require him to submit the results of an MMPI-II test in order to receive an evidentiary hearing on his claim of mental retardation. He is correct. The standard for obtaining an evidentiary hearing under Mississippi law is distinct from the standard for an adjudication of mental retardation. Implicit in this Court's conclusion was that Petitioner failed to produce a credible opinion that he was mentally retarded, in part, because he could not submit the test results necessary for an adjudication of mental retardation. The Court's

conclusion unnecessarily clouded the straightforward requirements for an evidentiary hearing pursuant to Mississippi law. Having so stated, the Court does not here find Petitioner is entitled to an evidentiary hearing based on his claim, nor does it find that the Mississippi Supreme Court's adjudication of the issue without a hearing was error. It only corrects and clarifies that the completion of an MMPI-II test is not a requirement to obtaining an evidentiary hearing on an *Atkins* claim pursuant to Mississippi law.

## II. Evidentiary Hearing

In Petitioner's second argument, he contends this Court made a manifest error of law or fact in determining Petitioner was not entitled to an evidentiary hearing on his claim, as this Court essentially required him to prove his claim of mental retardation prior to receiving a hearing on this issue. (Mot. 2, 11).

In its opinion, the Court stated the record contained no "clear indication or opinion" Petitioner was retarded. (Op. at 69-70). Petitioner asserts this ignores Dr. Grant's clear opinion that Petitioner is mentally retarded, and that the absence of a hearing in State court on the disputed facts entitles him to a hearing pursuant to federal law. (Mot. 13). Petitioner also contends that the Mississippi Supreme Court's fact-finding and credibility determinations on the basis of a paper record constitute an arbitrary change in procedure that does not prevent federal review of the claim, and that these disputes must be resolved after an evidentiary hearing. (Mot. 13-14, 17).

This Court determined that its review of Mississippi cases indicated the Mississippi Supreme Court "allows for an evidentiary hearing upon strict adherence to the *Chase* requirements, unless the proof is such that the court may dispose of the claim as having no merit without a remand. In this case, the trial record reflects Petitioner suffers from borderline intellectual functioning, which Petitioner's own expert classified as distinct from mental

retardation." (Op. 71-72). As noted in the previous section, this Court determined Petitioner did not demonstrate an entitlement to relief, and it further determined the State's procedure did not deny him a fundamentally fair proceeding in light of the presented evidence. (Op. 73).

The Mississippi Supreme Court rejected Petitioner's claim of mental retardation on the basis of a record containing contradictory evidence. The Mississippi Supreme Court determined that the weight of the evidence was strong enough to resolve the dispute, and the dispute was resolved against Petitioner's claim. Petitioner does not assert that the Mississippi Supreme Court refused to consider relevant evidence. Rather, Petitioner only argues he should have been afforded a hearing so that the court could make live fact-finding and credibility determinations. Petitioner submitted to this Court no information that had not already been considered and rejected by the Mississippi Supreme Court, and this Court determined Petitioner had failed to show the Mississippi Supreme Court was unreasonable in rejecting his allegations. Inasmuch as this Court resolved Petitioner's claim on the basis of the Mississippi Supreme Court's determination that Petitioner is not mentally retarded, the denial of an evidentiary hearing on the issue was not expounded upon in the Court's analysis. The Court, having considered the issues raised in the instant Motion, determines further inquiry into this issue is warranted prior to ruling on this argument.

Therefore, the Court requires the parties to brief the following issues: (1) whether Mississippi's change in procedure during Petitioner's state post-conviction proceedings denied him a constitutional right; (2) whether the resolution of disputed factual issues on the basis of a paper record constitutes a full and fair hearing under Petitioner's particular circumstances; and (3) whether Petitioner must overcome the deferential standards of the AEDPA in order to be entitled to an evidentiary hearing in federal court.

The partial grant of this Motion is not a determination that Petitioner is entitled to an evidentiary hearing on his claims, nor that the Court has determined the Mississippi Supreme Court made an unreasonable application of law or an unreasonable determination of facts. The Court does not here make a ruling as to the appropriateness of an evidentiary hearing on Petitioner's claim. Inasmuch as the Court has determined the opinion entered in this cause should be altered to clarify the standards for an evidentiary hearing pursuant to Mississippi law, the Court shall withdraw the Opinion, Order, and Final Judgment entered in this cause. The Court will reserve ruling on Petitioner's second asserted error until both parties have had a full opportunity to brief the issues.

Accordingly, it is **ORDERED** that "Petitioner William Lee Wiley's Motion to Alter or Amend This Court's February 2, 2007, Order" is **GRANTED IN PART**. It is further **ORDERED** that the Opinion[2], Order[3], and Final Judgment[4] entered in this cause are hereby **WITHDRAWN**. It is finally **ORDERED** that each party submit to the Court a brief in accordance with the dictates of this order on or before April 10, 2007.

**SO ORDERED** this the 26th day of February, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Docket entry. no. 36.

[3] Docket entry no. 34.

[4] Docket entry. no. 35.